**CT Corporation**

**Service of Process Transmittal**
01/12/2015
CT Log Number 526380219

**TO:**   Sheryl Garland
Nordstrom, Inc.
1700 7th Ave Ste 1500
Seattle, WA 98101-4419

**RE:**   **Process Served in Massachusetts**

**FOR:**   Nordstrom, Inc. (Domestic State: WA)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Judith Shaulis, Pltf. vs. Nordstrom, Inc., etc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Proof of Service, Second Amended Complaint, Exhibit(s), Attachment |
| **COURT/AGENCY:** | Suffolk County Superior Court, MA<br>Case # SUCV201403483 |
| **NATURE OF ACTION:** | Injunctive and Declaratory Relief - Fraud - Breach of Contract by "Compare At" price does not exist in the marketplace - Unjust Enrichment - Violations of the Code of Massachusetts Regulations and the FTCA - Violations of M.G.L. c 93A - False or Deceptive Price Advertising |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Boston, MA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 01/12/2015 at 13:40 |
| **JURISDICTION SERVED :** | Massachusetts |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | S. James Boumil<br>S. James Boumil, J.D.<br>120 Fairmount Street<br>Lowell, MA 01852<br>978-458-0507 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 01/13/2015, Expected Purge Date: 01/18/2015<br>Image SOP<br>Email Notification, Sheryl Garland sheryl.garland@nordstrom.com<br>Email Notification, Robert Ranf robert.l.ranf@nordstrom.com<br>Email Notification, Lauren Peter lauren.c.peter@nordstrom.com<br>Email Notification, Nordstrom Risk Records rskrcds@nordstrom.com<br>Email Notification, Sylvia Lock-Kirihara sylvia.lock-kirihara@nordstrom.com |
| **SIGNED:**<br>**ADDRESS:**<br><br><br><br>**TELEPHONE:** | C T Corporation System<br>155 Federal Street<br>Suite 700<br>Boston, MA 02110<br>617-757-6404 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



**Service of Process Transmittal**
01/12/2015
CT Log Number 526380219

**TO:**   Sheryl Garland
          Nordstrom, Inc.
          1700 7th Ave Ste 1500
          Seattle, WA 98101-4419

**RE:**   **Process Served in Massachusetts**

**FOR:**  Nordstrom, Inc. (Domestic State: WA)

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED: | DATE AND HOUR OF SERVICE: | TO: | CT LOG NUMBER: |
|---|---|---|---|
| Letter, Attachment | By Regular Mail on 11/04/2014 at 11:20 postmarked on 11/03/2014 | Sheryl Garland Nordstrom, Inc. | 526013163 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

SUCV

No. SUCV2014-03483

~~Judith Shaulis~~ , Plaintiff(s)

v.

~~Nordstrom Inc., d/b/a Norstrom the~~ , Defendant(s)
Rack

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon S. James Boumil, Esq.

plaintiff's attorney, whose address is ~~120 Fairmount St. Lowell, MA~~ , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, **Judith Fabricant**, Esquire, at Boston, the ___31st___ day of ___December___, in the year of our Lord two thousand _2014_.

*Michael Joseph Donovan*

Clerk/Magistrate

A true copy Attest
Deputy Sheriff Suffolk County

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 20M-10/11

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 201___, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

_____

Dated:_____,201_____.           _____

**N.B.   TO PROCESS SERVER: –**
**PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN**
**THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.**

| December 31 | ,2014 . |

**Commonwealth of Massachusetts**

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. __SUCV2014-03483__

Judith Shaulis _____, Plff(s).

v.

~~Nordstrom d/b/a Nordstrom The Rack~~ _____, Deft(s).

**SUMMONS**
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

SUFFOLK SUPERIOR COURT
C.A. NO. SUCV2014-03483

Judith Shaulis,
     Plaintiff,

v.

NORDSTROM, INC.,
d/b/a NORDSTROM RACK,
     Defendant.

)
)
)
)
)
)
)
)
)
)

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff, Judith Shaulis ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following based upon personal knowledge as to allegations regarding Plaintiff and on information and belief as to other allegations:

### I.    INTRODUCTION

1.    This is a civil class action seeking monetary damages, restitution, injunctive and declaratory relief from Defendant, Nordstrom, Inc. ("Nordstrom"), arising from its deceptive and misleading labeling and marketing of merchandise it sells at its company-owned Nordstrom Rack stores. Defendant's Agent for the service of process in the Commonwealth is "CT Corporation System" 155 Federal Street, Suite 700, Boston, MA 02110. The address of the Corporation's principal headquarters is 1617 6th Avenue, Seattle, Washington 98101.

2.    During the Class Period (defined below), Nordstrom misrepresented the existence, nature, and amount of price discounts on products: (a) manufactured exclusively for Nordstrom Rack and sold at Nordstrom Rack; and (b) manufactured by other brands and sold at Nordstrom Rack (collectively "Nordstrom Rack

Page1

1

Products") by purporting to offer discounts off of fabricated former prices. The term "Nordstrom Rack Products" expressly excludes products sold at Nordstrom Rack stores that were actually previously offered for sale at Nordstrom main line retail stores.

3.     Specifically, Nordstrom represented—on the price tags of its Nordstrom Rack Products—"Compare At" prices that were overstated and did not represent a bona fide price at which Nordstrom formerly sold Nordstrom Rack Products. Nor were the advertised "Compare At" prices prevailing market retail prices within three months immediately preceding the publication of the advertised former prices, as required by Massachusetts law.

4.     Having touted false "Compare At" prices, Nordstrom then offered, on the same sales tags, to sell Nordstrom Rack Products for prices that supposedly represented a deep percentage discount off of the false "Compare At" prices.

5.     But the "Compare At" prices used by Nordstrom were a sham. In fact, Nordstrom sells certain goods manufactured by third-party designers for *exclusive sale* at its Nordstrom Rack stores and other outlet stores, which means that such items were never sold—or even intended to be sold—at the "Compare At" prices advertised on the price tags. Nordstrom Rack Products were never offered for sale in Nordstrom's main line retail stores in Massachusetts, or in any other state. Nordstrom Rack's website, however, falsely suggests that the Nordstrom Rack Products are equivalent to the products sold at Nordstrom's main line retail stores: "Why Shop the Rack? Because we have the most current trends and the brands you love for 30-70% off original prices—each and every day." The truth is that the Nordstrom Rack Products are not discounted off "original prices." Most Nordstrom Rack Products are seldom if ever offered for sale at the Nordstrom main line retail stores and are typically of lesser quality.

6.     The "Compare At" prices listed on Nordstrom Rack Products' tags did

not represent a former price at all—much less a former price in the preceding three months as required by 940 CMR 6:01 et seq. They are fictional amounts intentionally selected so that Nordstrom Rack could advertise phantom markdowns. The entire price tag – indeed the entire "outlet store" &/or "discount store" motif – is designed to falsely convince consumers that they are buying main line retail designer brand products at reduced prices. In fact, consumers are buying lower quality goods that were never offered or sold as genuine quality designer brand clothing and accessories, and even if buying regular quality goods, are not purchasing such goods for real discounts in compliance with the Massachusetts code of Regulations and other applicable law.

7.      The Federal Trade Commission ("FTC") explicitly describes the fictitious pricing scheme employed at Nordstrom Rack stores as deceptive:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious -- for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction -- the 'bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1.

8.      Similarly, Massachusetts statutory and regulatory law expressly prohibits false pricing schemes. For example, 940 CMR 6:01 defines the term "Price Comparison". See 940 CMR 6:01 et seq. "Price Comparison" means the comparison in any advertisement (whether or not expressed wholly or in part in dollars, cents, fractions, or percentages) of a seller's current price for a product

with any other price or representation of value, whether or not such other price is actually stated in the advertisement. Price comparison includes any price reduction claim or savings claim which a seller makes with respect to the seller's current price for any product.

9.     The Nordstrom Rack pricing scheme was prominently displayed on substantially all products available for sale at Nordstrom Rack stores in Massachusetts. To illustrate, a merchandise price tag and sales slip for an item sold at Nordstrom Rack is attached hereto as Exhibits A & B.

10.     Upon information and belief, thousands of Massachusetts consumers were victims of Nordstrom's deceptive, misleading, and unlawful false pricing scheme and thousands more will be deceived if the practices continue.

Nordstrom fraudulently concealed from, and intentionally failed to disclose to, Plaintiff, and others similarly situated, the truth about its "Compare At" prices and advertised price discounts from those supposedly former prices.

Nordstrom's false representations of original prices and false representations of purported savings, discounts, and bargains are objectively material to a reasonable consumer.

11.     Plaintiff relied upon such false representations of "Compare At" prices and discounts when purchasing apparel from a Nordstrom Rack store in Massachusetts. Plaintiff would not have made such purchase, or would not have paid the amount she did, but for Nordstrom's false representations of the former price of the items she purchased, as compared to the supposedly discounted "Compare At" price and corresponding "savings" at which Nordstrom Rack offered the items for sale. Plaintiff, in short, believed the truth of the price tags attached to the products she purchased at Nordstrom Rack, which expressly advertised that she was getting a significant discount on her purchase. In fact, she was not getting a bargain at all. Through its false and deceptive marketing, advertising, and pricing scheme,

Nordstrom violated (and continues to violate) Massachusetts law prohibiting advertising goods for sale as discounted from former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions. Specifically, Nordstrom violated (and continues to violate) 940 CMR 6:01 *et seq.*, and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements. 15 U.S.C. §§ 52(a) and 15 U.S.C. § 45(a)(1). Plaintiff, individually and on behalf of all others similarly situated, seeks restitution and other equitable remedies, including an injunction under applicable statutory law.

## II.    PARTIES

12.    Plaintiff, Judith Shaulis, is an individual who is a citizen of Pembroke, Massachusetts. In reliance on Nordstrom's false and deceptive advertising, marketing, and pricing schemes, Plaintiff purchased an item from Nordstrom Rack located in Boston, MA, on November 1, 2014, and as detailed herein, was damaged as a result thereof.

13.    Defendant Nordstrom, Inc. is a corporation duly organized and existing under the laws of the State of Washington, with its principal place of business at 1617 Sixth Avenue, Seattle, WA, 98101.

14.    As of 2014, Nordstrom operates five (5) Nordstrom Rack stores in Massachusetts, throughout several Counties including Suffolk.

## III.    JURISDICTION AND VENUE

15.    This Court has original jurisdiction of this action pursuant to Mass R. Civ Proc. 23, G.L. c 93A, and the common law of the Commonwealth.

16.    The Commonwealth of Massachusetts has personal jurisdiction over Nordstrom, Inc. because Nordstrom, Inc. is licensed and doing business in Suffolk, Middlesex, Essex, and Worcester Counties in Massachusetts, authorized to do

business in Massachusetts and registered with the Massachusetts Secretary of State, and has sufficient minimum contacts with Massachusetts, having intentionally availed itself of the Massachusetts market so as to render the exercise of jurisdiction over it by this Court consistent with traditional notions of fair play and substantial justice. Upon information and belief, every day that its stores are open in the Commonwealth, the Defendant solicits business from and actually sells products to hundreds if not thousands of Massachusetts concumers.

17.    Venue is proper in the Suffolk Superior Court, Commonwealth of Massachusetts because Plaintiff is a resident of Massachusetts; Defendant operates its stores in Suffolk, Middlesex, Essex, and Worcester Counties in Massachusetts and because a the events giving rise to the claims occurred in Suffolk, Middlesex, Worcester, and Essex Counties.

## IV.    FACTUAL ALLEGATIONS

18.    Traditionally, retail outlet stores were located in remote areas and typically maintained an inventory of defective and excess merchandise. Customers often flocked to these outlets in hopes of finding steep discounts and bargains. *See http://www.forbes.com/sites/investopedia/2012/12/29/7-tips-for-outlet-mall-shopping/* (last visited November 3, 2014).

19.    However, in an effort to increase profits, major retailers such as Nordstrom Rack have, without notice to consumers, begun using company-owned outlet stores to sell made-for-outlet goods that are never intended to be sold at non-outlet stores, and further to operate these stores as "discount" outlets at which superior "bargains" are available.

20.    The very terms "outlet" conveys to reasonable consumers that products are comprised of merchandise formerly offered for sale at full-price retail locations.

Similarly, the Nordstrom Rack name connotes a store selling discounted outlet clothing. Indeed, Nordstrom Rack's website describes Nordstrom Rack as "the off-price retail division of Nordstrom Inc., which was founded in 1901 in Seattle, Washington by John W. Nordstrom."

21.    Instead, retailers like Nordstrom create the illusion of traditional outlet discounts and bargains by offering the made-for-outlet goods at prices reduced from fabricated, arbitrary, and false prices. In short, outlet stores such as Nordstrom Rack are using false and fraudulent price comparison tactics. *See http://www.buzzfeed.com/sapna/customers-finally-aware-that-most-outlet-merchandise-is-now* (last visited November 3, 2014) ("While price tags on outlet goods may list a manufacturer-suggested retail price (known as an MSRP) or, a 'valued at' price, that's little more than a number ascribed by the retailer and doesn't mean it was ever sold for such a sum in an actual full-price retail location.").

22.    The intentional use of false and fraudulent price comparison tactics is increasingly deceiving consumers in the market. To illustrate, on January 30, 2014, four Members of Congress demanded an FTC investigation of misleading marketing practices by outlet stores across the United States. The four Members of Congress described a pricing scheme similar to the one implemented at Nordstrom Rack stores and stated, "[i]t is a common practice at outlet stores to advertise a retail price alongside the outlet store price—even on made-for-outlet merchandise that does not sell at regular retail locations. Since the item was never sold in the regular retail store or at the retail price, the retail price is impossible to substantiate. We believe this practice may be a violation of the FTC's Guides Against Deceptive Pricing (16 CFR 233)."

*See http://www.whitehouse.senate.gov/news/release/sens-and-rep-to-ftc-outlet-stores-may-be-misleading-consumers.*

23.     This is precisely the practice used by Nordstrom in its Nordstrom Rack
stores.

### V.     Plaintiff's Purchase

24.     On November 1, 2014, Plaintiff entered the Nordstrom Rack located in
Boston, Massachusetts. She observed that merchandise was advertised with price
tags that represented "Compare At" prices that were directly on top of prices
significantly reduced by a percentage amount. Enticed by the idea of paying
significantly less than the "Compare At" price charged outside of Nordstrom Rack,
Plaintiff was induced to purchase a cardigan sweater with a "Compare At" price of
$218.00 and an actual price of $49.97.

By purchasing the sweater identified in Exhibits A & B hereto for a "Compare At"
price of $218.00, for the sum of $49.97.  By purchasing the item shown in Exhibit
A for $49.97 instead of the "Compare At" price of $218.00, Plaintiff was induced
to believe that she saved at least 77% on her purchase.  In fact, Nordstrom declared
to the customer "You SAVED: $168.03 Congratulations! You saved more than
you spent.  You're a shopping genius!"

25.     In reality, Nordstrom never intended nor did it ever sell the item on Exhibit
A at the represented "Compare At" price.

Thus, Plaintiff was deceived by the false price comparison into making a full retail
purchase with no discount.

26.     Plaintiff's and class members' reliance on Nordstrom's false price
comparison advertising was reasonable. In fact, empirical marketing studies
provide an incentive for retailers to engage in this false and fraudulent behavior:

> [c]omparative price advertising offers consumers a basis for comparing the
> relative value of the product offering by suggesting a monetary worth of the
> product and any potential savings...[A] comparative price advertisement can
> be construed as deceptive if it makes any representation,... or involves any
> practice that may materially mislead a reasonable consumer.

Page 8

Page 8

*Comparative Price Advertising: Informative or Deceptive?,* Dhruv Grewal and Larry D. Compeau, *Journal of Public Policy & Marketing* , Vol. 11, No. 1, at 52 (Spring 1992). In short:

> [b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product...Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id.* at 55, 56.

27.     Despite the "Compare At" scheme used at Nordstrom Rack stores, Plaintiff would purchase Nordstrom Rack Products in the future from Nordstrom Rack stores and/or other retail establishments, if price tags accurately reflect "former" prices and discounts. Currently, however, Plaintiff and Massachusetts consumers have no realistic way to know which—if any—of Nordstrom Rack price tag comparisons are not false or deceptive. If the Court were to issue an injunction ordering Nordstrom to comply with Massachusetts' comparative price advertising laws, and prohibiting Nordstrom's use of the deceptive practices discussed herein, Plaintiff would likely shop for Nordstrom Rack Products again in the near future at Nordstrom Rack stores.

## VI.   CLASS ALLEGATIONS

28.     Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if set forth herein in full.

29.     Plaintiff brings this action on behalf of herself and the members of the proposed Class. The proposed Class consists of:

> All individuals residing in the Commonwealth of Massachusetts who, within the applicable statute of limitations preceding the filing of this action
(including but not limited to from 11/2/10 through the present –"Class Period"), purchased Nordstrom Rack Products.

30.     Excluded from the Class are Nordstrom, its parents, subsidiaries, affiliates, officers and directors, any entity in which Nordstrom has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

31.     The members of the Class are so numerous that joinder is impractical. The Class consists of thousands of members, the precise number which is within the knowledge of and can be ascertained only by resort to Nordstrom's records.

32.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     Whether, during the Class Period, Nordstrom used false price representations and falsely advertised price discounts on Nordstrom Rack Products;

(b)     Whether, during the Class Period, the "Compare At" prices advertised by Nordstrom were the prevailing market prices for the Nordstrom Rack Products during the three month periods preceding the dissemination and/or publication of the advertised former prices;

(c)     Whether Nordstrom's use of false or deceptive price advertising constituted false advertising under Massachusetts Law;

(d)     Whether Nordstrom engaged in unfair, unlawful and/or fraudulent business practices under Massachusetts law;

(e)     Whether Nordstrom misrepresented and/or failed to disclose material facts about its product pricing and discounts;

(f)     Whether Nordstrom made false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(g)     Whether Nordstrom's conduct, as alleged herein, was intentional and knowing;

(h)     Whether Class members are entitled to damages and/or restitution, and in what amount;

(i)     Whether Nordstrom is likely to continue using false, misleading or illegal price comparisons such that an injunction is necessary; and

(j)     Whether Plaintiff and Class members are entitled to an award of reasonable attorneys' fees, pre-judgment interest and costs of suit.

33.     Plaintiff's claims are typical of the claims of the members of the Class and, like all members of the Class, purchased goods from a Nordstrom Rack store that falsely conveyed a "Compare At" price and a fictitious discount. Accordingly, Plaintiff has no interests antagonistic to the interests of any other member of the Class.

34.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained counsel who is experienced in prosecuting class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

35.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Nordstrom's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

36.     The prosecution of separate actions by members of the Class would create a

risk of establishing inconsistent rulings and/or incompatible standards of conduct for Nordstrom. For example, one court might enjoin Nordstrom from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

37.    The conduct of Nordstrom is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, the systematic policies and practices of Nordstrom make declaratory relief with respect to the Nordstrom Massachusetts class as a whole appropriate.

37.1)  This paragraph alleges certain typical examples of the pricing schemes and tactics utilized by the Defendant:

a)    On 12/6/14 the Defendant at its Rack outlet in Danvers, MA offered for a sale a product identified as a Lafayette 148 New York "Stretch Wool Jacket". The price offered was $89.70, claiming to be an 85% discount from the "suggested retail price" of $598.  A thorough search of internet sites offering this product could find non offering the product for anywhere near $598.00. Indeed Nordstrom's own website (not the Rack) said that the product was "not available".

b)    On 11/7/14 a Nordstrom representative stated in response to an inquiry about product availability that: "Since this jacket is last year's style we may have had them for a moment and the vendors may have sent us a different style to sell so we either sold through the older style or whatever we had left was sent to Nordstron rack".

c)    On 12/6/14 a Tailorbird "Aubergine Sharkskin" blazer was offered at Nordstrom Rack in Danvers, MA, claiming a "compare at" price of $499 and a sales price of $89.97, amounting to an 82% savings. The product was unavailable on the Tailorbyrd website, and anywhere else that could be found, except at the Rack and at the price of $89.97. There is no evidence that this product was ever sold in any relevant market for any meaningful period of time for a price of $499, against a thorough search for such price and therefore upon informed information

and belief, it did not.

d)    On 12/6/14 a sweater bearing the label "Olivia Sky" stating that it was being sold for $54.97 against a "Compare At" price of $168.00 was offered for sale at Nordstrom Rack in Danvers, MA. There is no evidence that this product was ever sold in any relevant market for any meaningful period of time for a price of $168, against a thorough search for such price, and therefore upon informed information and belief it did not.

e)    On 12/6/14 a sweater bearing the label "Olivia Sky" was offered for $29.97 against a "compare at" price of $58.00 for an alleged savings of "48%". Style M5787RK. There is no evidence that this product was ever sold in any relevant market for any meaningful period of time for a price of $58.00 against a thorough search for such price, and therefore upon information and belief it did not.

f)    Pursuant to 940 CMR 6.03 "The responsibility for truthful and nondeceptive advertising rests with the seller. Sellers must be able to substantiate material representations made before such representations are disseminated" and further it is the Seller's responsibility to maintain the records needed to demonstrate that the Code of Massachusetts Regulations was complied with.

g)    940 CMR 6.05 declares that it is the policy of the Commonwealth with respect to retail sales that "Abuse ... occurs when sellers fail to disclose material information which is important to enable consumers to understand the price comparison" , and further "It is the intent of 940 CMR 6.00 to ensure that the comparative price used in any price comparison advertisement provides accurate and meaningful guidance to the consumer, and to this end 940 CMR 6.05(1) through (17) are to be liberally construed.

h)    On 12/6/14 a shirt purporting to be a "Brooks Brother's shirt, Blue #100014930 tagged "Compare at 92.00" was offered for sale at $49.97. The "compare at" shirt offered for $92 are in actuality NOT the same shirts as Nordstrom carries, but are instead are "Classic" Brooks Brothers shirts carried by Brooks Brothers and made of trademarked material "Supima" cotton. The Nordstrom shirts are not labeled as made from Supima and are not of the quality of the Brooks Brothers "Classic" line.

i)    The practices of the Defendant as set forth in this Complaint and through numerous other examples that may be seen in any walk through of Defendant's Danvers Store in the Commonwealth violate the policy declared by 940 CMR 6.05,

Page 13

by among other things, suggesting to the consumer that the alleged substantial discounts they are allegedly obtaining were calculated by utilizing real product prices for identical merchandise sold in the relevant market available to consumers in the Commonwealth, at a relevant time. Manifestly if a product is no longer sold in main stream commerce, or is not anywhere available in a manner where consumers may find it upon a reasonable search, any "compare at" pricing or allegations of sale price are inherently misleading and violate the policy established by 940 CMR 6.00.

Page14

### COUNT I - FRAUD

38.    Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

39.    At a specific time, namely November 1, 2014, the Defendant Nordstrom, made a specific representation to the Plaintiff that it was selling the item represented in Exhibits A & B hereto for a price of $49.97, which price represented a "77% savings".

40.    Specifically, the Defendant Nordstrom, represented to the Plaintiff that the Plaintiff saved "$168.03" on the purchase and further represented "congratulations, you saved more than you spent, you're a shopping genius".

41.    This representation was made at the Defendant's store in Boston located at 497 Boylston Street, Boston, MA 02116.  Based upon the allegations in the preceding Paragraphs and the entire setup of the "The Rack", the Defendant intended that the Plaintiff believe and rely upon its representation that the Plaintiff had saved more than she had spent and that the item was truly being sold at a 77% discount representing an enormous savings to the Plaintiff.

42.    The Defendant made the above representations for the purpose of inducing and intending that the Plaintiff rely thereon and the Plaintiff did rely thereon.

43.    The reliance of the Plaintiff was reasonable in that Nordstrom holds itself out to the public as a reputable department store which ought to be held in esteem by the public.  Nordstrom states in its public advertising that "Since 1901, we've

Page14

been committed to providing our customers with the best possible service – and to improving it every day".

44.    Nordstrom also advertises to its customers "In store or online, whatever new opportunities arise, Nordstrom works relentlessly to give customers the most compelling shopping experience possible". And additionally: Nordstrom promises to "provide exceptional service, selection, quality, and value".

45.    The entire in-store atmosphere, presentation, advertising, internet presence, and commercial "packaging" of Nordstrom is an attempt by the Defendant to create in the minds of the public that it is a store of high quality in which the public may rely upon the representations made by management as to the pricing and quality of the products offered.

46.    These acts and practices alleged above are fraudulent because they caused Plaintiff, and are likely to cause consumers, to falsely believe that Nordstrom Rack is offering value, discounts or bargains from the prevailing market worth of the products sold that did not, in fact, exist. As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly sold in the non-outlet retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid. This perception has induced reasonable purchasers, including Plaintiff, to buy Nordstrom Rack Products, which they otherwise would not have purchased.

47.    The gravity of the harm to members of the Class resulting from these fraudulent acts and practices outweighed any conceivable reasons, justifications and/or motives of Nordstrom Rack for engaging in such fraudulent acts and practices.

48.    Through its fraudulent acts and practices, Nordstrom has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this court cause Nordstrom to restore this money to Plaintiff and all Class members,

and to enjoin Nordstrom from continuing to violate the 940 CMR 6:01 *et seq.* as discussed herein and/or from violating the CMR in the future. Otherwise, Plaintiff and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

49.     A business act or practice is "fraudulent" under the CMR if it is likely to deceive members of the consuming public.

50.     The labels on the Nordstrom Rack Products and advertising materials concerning false former prices were fraudulent within the meaning of the applicable CMR's because they deceived Plaintiff, and were likely to deceive members of the class, into believing that Nordstrom was offering value, discounts or bargains at Nordstrom Rack stores from the prevailing market value or worth of the products sold that did not, in fact, exist.

51.     Nordstrom deceived consumers into believing that it was offering value, discounts or bargains at Nordstrom Rack stores from the prevailing market value or worth of the Nordstrom Rack products sold that did not, in fact, exist.

52.     As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly sold in the main line retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid. This perception induced reasonable purchasers, including Plaintiff, to buy Nordstrom Rack Products, which they otherwise would not have purchased.

53.     Nordstrom's acts and practices as described herein have deceived Plaintiff and were highly likely to deceive members of the consuming public. Specifically, in deciding to purchase Nordstrom Rack Products, Plaintiff relied on Nordstrom's misleading and deceptive representations regarding its "Compare At" and percentage discounted prices. Each of these factors played a substantial role in Plaintiff's decision to purchase those products, and Plaintiff would not have purchased those items in the absence of Nordstrom's misrepresentations and

knowing fraud. Accordingly, Plaintiff suffered monetary loss as a direct result of Nordstrom's pricing practices described herein.

## Count II – Breach of Contract

54.   Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

55.   Defendant offers for sale at its stores in Massachusetts items such as the one here in contest, at prices and terms similar to the terms set forth in Exhibit A hereto. The majority of items offered for sale are stamped with the same "Compare At" or functionally equivalent language set forth in those exhibits.

56.   A person (in this case the Plaintiff, or others of the same class similarly situated) purchasing the item makes a contract of purchase and sale, consummated by payment, typically in cash or by credit card. The items come with an implied warranty of fitness, and parameters set forth in the documents contained on the goods. For example, an item labeled "small", in instead measured as a "large" could be returned for breach of contract and the money refunded (apart from store policies).  An item labeled "wool" which was instead "cotton", likewise, could be returned and the "contract" of sale rescinded.

57.   All Massachusetts contracts contain an implied warranty of good faith and fair dealing, which, at the least, means that the contract terms ought not to be materially deceptive and misleading.

58.   The representation on the product documents which are Exhibits A & B is that the price to be paid represents a 77% savings and, therefore, is a very substantial sale in which more is saved than was spent. However, given that the "Compare At" price does not exist in the marketplace within the meaning of the requirements of the Code of Massachusetts Regulations, the terms of the contract of purchase and sale are either explicitly violated or, at the very least, the covenant

of good faith and fair dealing inherent in every Massachusetts contract has been violated. There was no 77% off "sale" and no money was saved.

The representations made in the contract of sale, consummated by payment, were a material inducement to effectuate the sale, upon which the Plaintiff and thousands similarly situated relied in purchasing goods from the Defendant.

59.     As a result of these allegations the Plaintiff and all similarly situated class members have suffered damage for which compensation should be granted.

### COUNT III – Unjust Enrichment

60. Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

61.     As a result of the conduct described above, Nordstrom has been unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Nordstrom has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

62.     Through its unfair acts and practices, Nordstrom has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this court cause Nordstrom to restore this money to Plaintiff and all Class members, and to enjoin Nordstrom from continuing to violate the CMR's as discussed herein and/or from violating the CMR in the future. Otherwise, Plaintiff and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### COUNT IV – Violations of the Code of Massachusetts Regulations and the FTCA

63.     Plaintiff incorporates and realleges by reference each and every allegation

contained in the preceding paragraphs as if fully set forth herein.

64.    Nordstrom also violated and continues to violate 940 CMR 6:01 by advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months next preceding the publication and dissemination of advertisements containing the false former prices.

65.    The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements. (15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a)). The FTC has established guidelines which prohibit false pricing schemes, similar to Nordstrom's "Compare At" scheme in material respects, as deceptive practices that would violate the FTCA:

> (a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious -- for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction -- the ``bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1.

66.    Nordstrom's use of and reference to a materially false "Compare At" price in connection with its marketing and advertisements concerning the Nordstrom Rack Products violated and continues to violate the FTCA, 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as well as FTC Guidelines published at 16 C.F.R. § 233.

67.    As a result of the conduct described above, Nordstrom has been unjustly enriched at the expense of Plaintiff and members of the proposed Class.

Page19

Specifically, Nordstrom has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct.

68.     Through its unlawful acts and practices, Nordstrom has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this court cause Nordstrom to restore this money to Plaintiff and all Class members, and to enjoin Nordstrom from continuing to violate the CMR as discussed herein and/or from violating the CMR in the future. Otherwise, Plaintiff and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### Count V – Violations of M.G.L. c 93A

69)     Plaintiff incorporates and realleges by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

70)     The above allegations constitute fraudulent and deceptive trade practices which violate M.G.L. ch 93A, including section 9 thereof.

71)     A "demand letter" as specified by G.L. c 93A:9(3) was sent to  the Defendant both by certified mail and standard mail, and both to its Agent for the Service of Process in Massachusetts and to its home office. A copy of that "demand letter" and the certified mailings are set forth as Exhibit C hereof. Said Exhibit B is incorporated herein as if fully set forth in this complaint. Said demand was sent more than 30 days prior to the filing of this First Amended Complaint, which has been amended as of right under the Rules of civil Procedure. No response has been received to the Exhibit C Demand as of the date of this document, set forth at the end hereof.

72)     Pursuant to G.L. c 93A(9)(2):

a)      The unfair and deceptive act or practice has caused injury similar to the injury to Plaintiff to numerous other persons similarly situated, which the Plaintiff fairly represents.

b)      Plaintiff brings this action on behalf of herself and all persons within the Commonwealth similarly situated.

c)      Given that the practices detailed above have persisted over time for many months and that the Defendant has at least 5 stores located in several counties in Massachusetts, comprising upon information and belief, well over 100,000 square feet of retail space in among the most busy and desirable retail locations in the Commonwealth, it would be impractical if not impossible to seek relief for injured consumers on an individual basis.

73)     The acts and practices engage in by the Defendant as detailed above constitute unfair methods of competition and unfair and deceptive trade practices pursuant to G.L. c 93A:2 and/o the provisions of the Federal Trade Commission Act cited thereunder, and further constitute "trade and commerce" as defined under G.L. c 93A:1.


## PRAYERS FOR RELIEF

WHEREFORE, Plaintiff and the members of the Class demand a jury trial on all claims so triable and judgment against Defendant, Nordstrom, Inc., as follows:

A.      An order certifying that this action may be maintained as a class action, that Plaintiff be appointed Class Representative and Plaintiff's counsel be appointed Class Counsel;

B.      A judgment awarding Plaintiff and all members of the Class restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Nordstrom obtained from Plaintiff and the Class as a result of its unlawful, unfair and fraudulent business practices described herein;

C.    An order enjoining Nordstrom from continuing to violate the Code of Massachusetts Regulations as described herein;

D.    A judgment awarding Plaintiff her costs of suit; including reasonable attorneys' fees as permitted by statute or common law; and pre and post-judgment interest; and

E.    A judgment of breach of contract damages, and

F.    A judgment for damages resulting from fraud and deception, and

G.    A judgment of multiple damages, and particularly three times damages, and in addition reasonable attorneys' fees, and the costs of this action as are allowed by statute, and

H.    Such other damages pursuant to statute or common law, and such further relief as may be deemed necessary or appropriate under the facts as they are alleged or may be proven at trial, including any theory of law which may be applicable, whether designated to a particular "Count" or not.

DATED:     12/8/14

By: /s/_____
S. James Boumil, Esq.
(BBO#050940)
Boumil Law Offices
120 Fairmount Street
Lowell, MA 01852
Tel: 978-458-0507
E-mail: SJBoumil@Boumil-Law.com

**Attorney for Plaintiff**
**PLAINTIFF demands a jury trial on all issues for which a trial by jury is allowed or required.**

**EXHIBIT A**

# NORDSTROM
# rack

*The Newbury*
497 Boylston Street
Boston, MA 02116
(857) 300-2300

Store 547       Reg# 4901       Tran# 6961
SALE       Rng: Adam W.

SP UT BETT:OPEN CASCADE CARDI
829479594137
Compare At  218.00                      49.97

SUBTOTAL                                 49.97
SALES TAX                                 0.00

VISA      0000000000-0                   49.97
***********1392 S

TOTAL                                    49.97

Total Items Purchased = 1

********************************************
*You SAVED: $168.03
Congratulations!
You saved more than you spent.
You're a shopping genius!

*Savings comparison not available for all items
********************************************
Good shopping gets rewarded. Visit
nordstromfashionrewards.com for details.

********************************************



R 0547 4901 6961 110114 4

11/01/2014    12:34 PM

Your feedback is extremely valuable.
Take a 2 minute survey
about your experience at:
https://survey.medallia.com/rack

Thank you for shopping Nordstrom Rack.
Follow us on Twitter
http://twitter.com/Boston_Rack
#NordstromRack

SHOP WITH CONFIDENCE
Now you have up to 90 days
to make returns and exchanges.



NORDSTROM **rack**
7890015
CHALKBOARD HEATHER

8  29479 59413  7

**DEPT:597**

XL

COMPARE AT      218.00
77% Savings      49.97



EXHIBIT
B

# NORDSTROM
# rack

**The Newbury**
497 Boylston Street
Boston, MA 02116
(857) 300-2300

Store 547     Reg# 4901     Tran# 6961
SALE    Rng: Adam W.

SP UT BETT:OPEN CASCADE CARDI
829479594137                    49.97
Compare At  218.00

SUBTOTAL                        49.97
SALES TAX                        0.00

VISA         0000000000-0       49.97
***********1392 S

TOTAL                           49.97

Total Items Purchased = 1



*************************************
**\*You SAVED: $168.03**
Congratulations!
You saved more than you spent.
You're a shopping genius!

\*Savings comparison not available for all items
*************************************
Good shopping gets rewarded. Visit
nordstromfashionrewards.com for details.

*************************************

R 0547 4901 6961 110114 4

11/01/2014     12:34 PM

Your feedback is extremely valuable.
Take a 2 minute survey
about your experience at:
https://survey.medallia.com/rack
-
Thank you for shopping Nordstrom Rack.
Follow us on Twitter
http://twitter.com/Boston_Rack
#NordstromRack
-
SHOP WITH CONFIDENCE
Now you have up to 90 days
to make returns and exchanges.

NORDSTROM **rack**
7890015
CHALKBOARD HEATHER

6  29479 59413

DEPT:597

XL

COMPARE AT      218.00
77% Savings      49.97



𝔖. 𝔍𝔞𝔪𝔢𝔰 𝔅𝔬𝔲𝔪𝔦𝔩, 𝔍. 𝔇.
Counsellor at Law

120 Fairmount Street
Lowell, Massachusetts 01852
U. S. A.
Tel.: (978) 458 - 0507
Fax: (978) 453 - 5785
Email: SJBoumil@Boumil-Law.com

*Via Certified and First Class Mail*

3 November, 2014

Nordstrom, Inc.
d/b/a "The Rack"
1617 6th Avenue
Seattle, WA 98101

Service Agent for Nordstrom, Inc.
CT Corporation System
155 Federal Street, Suite 700
Boston, MA 02110

Dear Sir or Madam:

Please be advised that this office, together with the office of Konstantine W. Kyros, Esquire, Kyros Law Offices, PC, 17 Miles Road, Hingham, MA 02043, has been retained to represent the interests of Judith Shaulis, a consumer who purchased good from a Nordstrom, Inc., store known as Nordstrom "The Rack" located in Boston, Massachusetts.

The letter is sent to detail claims under Massachusetts General Laws Chapter 93A Section 9 concerning the fraudulent and deceptive trade practices of Nordstrom, Inc. (d/b/a "The Rack") with respect to the sale detailed in this letter. Please be advised as follows:

## I. Introduction

1.      Plaintiff, Judith Shaulis, is an individual who is a resident of Pembroke, Massachusetts. In reliance on Nordstrom's false and deceptive advertising, marketing, and pricing schemes, Ms. Shaulis purchased an item from Nordstrom Rack located in Boston, MA, on October 1, 2014, and as detailed

herein, was damaged as a result thereof.

2.      Defendant Nordstrom, Inc. is a corporation duly organized and
existing under the laws of the State of Washington, with its principal place of
business at 1617 Sixth Avenue, Seattle, WA, 98101.

3.      The Commonwealth of Massachusetts has personal jurisdiction over
Nordstrom, Inc. because Nordstrom, Inc. is licensed and doing business in Suffolk,
Middlesex, Essex, and Worcester Counties in Massachusetts, authorized to do
business in Massachusetts and registered with the Massachusetts Secretary of
State, and has sufficient minimum contacts with Massachusetts, having
intentionally availed itself of the Massachusetts market so as to render the exercise
of jurisdiction over it by this Court consistent with traditional notions of fair play
and substantial justice.

4.      On November 1, 2014, Plaintiff entered the Nordstrom Rack located
in Boston, Massachusetts. She observed that merchandise was advertised with
price tags that represented "Compare At" prices that were directly on top of prices
significantly reduced by a percentage amount. Enticed by the idea of paying
significantly less than the "Compare At" price charged outside of Nordstrom Rack,
Plaintiff was induced to purchase a cardigan sweater with a "Compare At" price of
$218.00 and an actual price of $49.97.

By purchasing the sweater identified in Exhibits A and B hereto for a
"Compare At" price of $218.00, for the sum of $49.97. By purchasing the item
shown in Exhibit A for $49.97 instead of the "Compare At" price of $218.00,
Plaintiff was induced to believe that she saved at least 77% on her purchase. In
fact, Nordstrom declared to the customer "You SAVED: $168.03 Congratulations!
You saved more than you spent. You're a shopping genius!" In reality,
Nordstrom never intended nor did it ever sell the item on Exhibit A at the
represented "Compare At" price.

5.      In reality, Nordstrom never intended, nor did it ever, sell the sweater
at the represented "Compare At" price. Thus, Plaintiff was deceived by the false
price comparison into making a full retail purchase with no discount.

6.      Plaintiff's and class members' reliance on Nordstrom's false price
comparison advertising was reasonable. In fact, empirical marketing studies
provide an incentive for retailers to engage in this false and fraudulent behavior:

[c]omparative price advertising offers consumers a basis for comparing the relative value of the product offering by suggesting a monetary worth of the product and any potential savings...[A] comparative price advertisement can be construed as deceptive if it makes any representation,... or involves any practice that may materially mislead a reasonable consumer.

*Comparative Price Advertising: Informative or Deceptive?*, Dhruv Grewal and Larry D. Compeau, *Journal of Public Policy & Marketing* , Vol. 11, No. 1, at 52 (Spring 1992). In short:

[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product...Thus, if the reference price is not truthful, a consumer may be encouraged to purchase as a result of a false sense of value.

*Id.* at 55, 56.

7.     Despite the "Compare At" scheme used at Nordstrom Rack stores, Plaintiff would purchase Nordstrom Rack Products in the future from Nordstrom Rack stores and/or other retail establishments, if price tags accurately reflect "former" prices and discounts. Currently, however, Plaintiff and Massachusetts consumers have no realistic way to know which—if any—of Nordstrom Rack price tag comparisons are not false or deceptive. If the Court were to issue an injunction ordering Nordstrom to comply with Massachusetts' comparative price advertising laws, and prohibiting Nordstrom's use of the deceptive practices discussed herein, Plaintiff would likely shop for Nordstrom Rack Products again in the near future at Nordstrom Rack stores.

## II.     Further Detail of Fraudulent and Deceptive Trade Practices

8.     At a specific time, namely November 1, 2014, the Defendant Nordstrom, made a specific representation to the Plaintiff that it was selling the item represented in Exhibit A hereto for a price of $49.97, which price represented a "77% savings".

9.     Specifically, the Defendant Nordstrom, represented to the Plaintiff that the Plaintiff saved "$168.03" on the purchase and further represented "congratulations, you saved more than you spent, you're a shopping genius".

10.     This representation was made at the Defendant's store in Boston located at 497 Boylston Street, Boston, MA 02116. Based upon the allegations in the preceding Paragraphs and the entire setup of the "The Rack", the Defendant intended that the Plaintiff believe and rely upon its representation that the Plaintiff had saved more than she had spent and that the item was truly being sold at a 77% discount representing an enormous savings to the Plaintiff.

11.     The Defendant made the above representations for the purpose of inducing and intending that the Plaintiff rely thereon and the Plaintiff did rely thereon.

12.     The reliance of the Plaintiff was reasonable in that Nordstrom holds itself out to the public as a reputable department store which ought to be held in esteem by the public. Nordstrom states in its public advertising that "Since 1901, we've been committed to providing our customers with the best possible service – and to improving it every day".

13.     Nordstrom also advertises to its customers "In store or online, whatever new opportunities arise, Nordstrom works relentlessly to give customers the most compelling shopping experience possible". And additionally: Nordstrom promises to "provide exceptional service, selection, quality, and value".

14.     The entire in-store atmosphere, presentation, advertising, internet presence, and commercial "packaging" of Nordstrom is an attempt by the Defendant to create in the minds of the public that it is a store of high quality in which the public may rely upon the representations made by management as to the pricing and quality of the products offered.

15.     These acts and practices above are fraudulent and deceptive trade practices because they caused Plaintiff, and are likely to cause consumers, to falsely believe that Nordstrom Rack is offering value, discounts or bargains from the prevailing market worth of the products sold that did not, in fact, exist. As a result, purchasers, including Plaintiff, reasonably perceived that they were receiving products that regularly sold in the non-outlet retail marketplace at substantially higher prices (and were, therefore, worth more) than what they paid. This perception has induced reasonable purchasers, including Plaintiff, to buy Nordstrom Rack Products, which they otherwise would not have purchased.

16.     A business act or practice is "fraudulent" under 940 CMR 6:01 *et seq.* if it is likely to deceive members of the consuming public.

17.     The labels on the Nordstrom Rack Products and advertising materials concerning false former prices were fraudulent within the meaning of the applicable CMR's because they deceived Judith Shaulis into believing that Nordstrom was offering value, discounts or bargains at Nordstrom Rack stores from the prevailing market value or worth of the products sold that did not, in fact, exist.

18.     Nordstrom deceived Ms. Shaulis into believing that it was offering value, discounts or bargains at Nordstrom Rack stores from the prevailing market value or worth of the Nordstrom Rack products sold that did not, in fact, exist.

19.     As a result, Ms. Shaulis reasonably perceived that she was receiving products that regularly sold in the main line retail marketplace at substantially higher prices (and were, therefore, worth more) than what she paid. This perception induced the Plaintiff to buy Nordstrom Rack Products, which she otherwise would not have purchased.

20.     Nordstrom's acts and practices as described herein have deceived Plaintiff. Specifically, in deciding to purchase Nordstrom Rack Products, Plaintiff relied on Nordstrom's misleading and deceptive representations regarding its "Compare At" and percentage discounted prices. Each of these factors played a substantial role in Plaintiff's decision to purchase those products, and Plaintiff would not have purchased those items in the absence of Nordstrom's misrepresentations and knowing fraud. Accordingly, Plaintiff suffered monetary loss as a direct result of Nordstrom's pricing practices described herein.

21.     The representation on the product documents which are Exhibits A & B is that the price to be paid represents a 77% savings and, therefore, is a very substantial sale in which more is saved than was spent. However, given that the "Compare At" price does not exist in the marketplace within the meaning of the requirements of the Code of Massachusetts Regulations, the terms of the contract of purchase and sale are either explicitly violated or, at the very least, the covenant of good faith and fair dealing inherent in every Massachusetts contract has been violated. There was no 77% off "sale" and no money was saved.

The representations made in the contract of sale, consummated by payment, were a material inducement to effectuate the sale, upon which the Plaintiff relied in purchasing goods from the Defendant.

22.     Nordstrom also violated and continues to violate 940 CMR 6:01 by

advertising false discounts from purported former prices that were, in fact, not the prevailing market prices within three months next preceding the publication and dissemination of advertisements containing the false former prices.

23.    The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and specifically prohibits false advertisements. (15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a)). The FTC has established guidelines which prohibit false pricing schemes, similar to Nordstrom's "Compare At" scheme in material respects, as deceptive practices that would violate the FTCA:

(a) One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious -- for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction -- the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1.

24.    Nordstrom's use of and reference to a materially false "Compare At" price in connection with its marketing and advertisements concerning the Nordstrom Rack Products violated and continues to violate the FTCA, 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as well as FTC Guidelines published at 16 C.F.R. § 233.

25.    Through its unlawful acts and practices, Nordstrom has improperly obtained money from Plaintiff and the Class. As such, Plaintiff requests that this court cause Nordstrom to restore this money to Plaintiff and all Class members, and to enjoin Nordstrom from continuing to violate the CMR as discussed herein and/or from violating the CMR in the future. Otherwise, Plaintiff and the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

26.   It is estimated that the cost of filing a complaint will be between $195 and $285 depending on the court in which it is filed, and that the cost of the sheriff service will be $65.  Additionally, the cost of the certified mailing is reasonably estimated to be approximately $12.

### III.   Relief

Please be advised that this office charges $500 per hour for representation in this type of matter, and has already expended 3 hours investigating and researching the complaint set forth.  It is estimated, subject to further discovery, that the true price for which the item was sold in the marketplace was, in fact, the price listed on the invoice which was not discounted by "77%" but, rather, it was discounted by nothing.  Therefore, it is estimated that the Plaintiff has suffered in damage the entire price of the item plus the price of travel to Boston and parking to shop at "The Rack" having been induced to attend through the description of nonexistent discounts which in reality did not exist.  It is estimated that another $25 was expended in that effort.

Pursuant to Massachusetts General Law Chapter 93A Section 2(a), you have 30 days to respond to this letter with a good faith offer in settlement in response to this request.

If you do not so respond, you are advised that the court may assess up to three times actual damages plus attorney's fees and the costs of any litigation.

Sincerely yours,

S. James Boumil, Esq.

SJB/kdf
Enclosure

Nordstrom, Inc.:    Certified Mail No.:  7002 0860 0008 7173 8225
(The Rack)          Return Receipt Requested

CT Corporation System: Certified Mail No.:  7002 0860 0008 7173 8232
(Agent – Nordstrom)    Return Receipt Requested

Cc: Konstantine W. Kyros, Esq. co-counsel

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Agent for Nordstrom, Inc.
CT Corporation System
155 Federal Street, Ste 700
Boston, MA 02110

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X MICHAEL CLOHERTY

B. Received by (Printed Name)     C. Date

D. Is delivery address different from item 1?
If YES, enter delivery address below:

NOV - 4 20

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☒ Return Receipt for
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)

2. Article Number
(Transfer from service label)     7002 0860 0008 7173 8232

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

O BOSTON MA 02110 C I A L   U S E

| | |
|---|---|
| Postage $ | $0.70 |
| Certified Fee | $3.30 |
| Return Receipt Fee (Endorsement Required) | $2.70 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees $ | $6.70 |

Postmark Here
02      11/03/2014

Sent To
CT CORPORATION SYSTEM, AGEN
Street, Apt. No.:
or PO Box No. 155 FEDERAL ST, STE 700
City, State, ZIP+4 BOSTON MA 02110

PS Form 3800, April 2002     See Reverse for Instructions

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

NORDSTROM, INC.
dba The Rack
1617 6TH AVENUE
SEATTLE, WA 98101

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X

B. Received by (Printed Name)     C. Date

D. Is delivery address different from item 1?
If YES, enter delivery address below:

NOV 06

3. Service Type
☒ Certified Mail   ☐ Express Mail
☐ Registered       ☒ Return Receipt for
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)

2. Article Number
(Transfer from service label)     7002 0860 0008 7173 8225

PS Form 3811, February 2004     Domestic Return Receipt     102

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

O SEATTLE WA 98101 I A L   U S E

| | |
|---|---|
| Postage $ | $0.91 |
| Certified Fee | $3.30 |
| Return Receipt Fee (Endorsement Required) | $2.70 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees $ | $6.91 |

Postmark Here
02      11/03/2014

Sent To
NORDSTROM INC dba The Rack
Street, Apt. No.:
or PO Box No. 1617 6th Avenue
City, State, ZIP+4 Seattle WA 98101

PS Form 3800, April 2002     See Reverse for Instructions