UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JUDITH SHAULIS,
           Plaintiff,

     v.

NORDSTROM, Inc., d/b/a
           Defendant,

CIVIL ACTION NO. 1:15-cv-10326-FDS

## Plaintiff Judith Shaulis' Opposition to Nordstrom's Motion to Dismiss

## I- Plaintiff Shaulis' reply to Defendant's "Introduction"

### A.

1.)     Defendant Nordstrom, Inc. d/b/a "The Rack" ("Rack") attempts to utilize the "Introduction" in its Memorandum (Doc #9) to circumvent the allegations of the Second Amended Complaint ("SAC") and the comprehensive regulatory framework which the Code of Massachusetts Regulations imposes on retail stores in the Commonwealth. While the Defendant offers a self-serving and irrelevant diatribe about its "unrelenting practice" to "put the consumer first", its deceptive pricing and advertising practices clearly demonstrate that Nordstrom, not unsurprisingly, puts its profits first. Such a priority would find no legally based objection if the requirements of the Code of Massachusetts Regulations ("CMR's") had been honored by the Rack's labeling and sales practices. Indeed in 20 pages of briefing the Defendant seems to be utterly unaware of the comprehensive regulatory structure which places the burden <u>on the Rack</u> to demonstrate that its advertising is not deceptive, and which reveals the Rack's "COMPARE AT" pricing scheme is deceptive, in violation of numerous Code sections, and therefore also in violation of M. G.L c. 93A.

2.)     Incomprehensibly the Defendant claims that the Plaintiff failed to plead that the Rack "knew" of its deceptive pricing scheme and/or alleged false statement (Doc #9 Memorandum, pg 1). However, Plaintiff Shaulis specifically alleges in paragraphs 24 and 25 of the SAC that the Rack advertised that the item Shaulis purchased was bought at a 77% discount to a "COMPARE AT"[1] price which the Rack never sold the product for. Defendant's claim that Plaintiff failed to consider "other sources" for the "COMPARE AT" price misses the regulatory mark by the proverbial mile. As will be seen below, if the product was not sold by the Rack (or Nordstrom) in the relevant time frame and market for the "compare at price", then exhibit s A and B to the SAC clearly show that the Rack failed to disclose in its ad the basis of its "compare at" calculation thus also violating the CMR'S. See 940 CMR 6.05(2). The Rack is simply unfamiliar with the requirements of the CMR's, and their relationship to M.G.L. c 93A, as its Memorandum amply reveals, and its deceptive advertising confirms. Appendix 1 contains relevant sections of the CMR's

**B. Legal Standard for Dismissal**

3.)     The standard for dismissal in the First Circuit centers around the plausibility of the allegations, taken as a whole:

"The plausibility standard governs on a motion to dismiss. So, " [n]o single allegation need [establish] . . . some necessary element [of the cause of action], provided that, in sum, the allegations of the SAC make the claim as a whole at least plausible." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 14-15 (1st Cir. 2011).*Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014).

4.)     Per usual, all factual allegations are taken as true. The inquiry as to whether there is a cause of action is determined from the four corners of the SAC, its attachments and documents incorporated into the SAC.

A court's goal in reviewing a Rule 12(b)(6) motion is to determine whether the factual allegations in the plaintiff's SAC set forth " a plausible claim upon which relief may be granted." *Woods v. Wells Fargo Bank, N.A.*, 733 F.3d 349, 353 (1st Cir. 2013). The court must take all of

---

[1] The capitalization is from the sales label, please see SAC Ex A-B.

the pleaded factual allegations in the SAC as true. Watterson, 987 F.2d at 3. Barring "narrow exceptions," courts tasked with this feat usually consider only the SAC, documents attached to it, and documents expressly incorporated into it.  In short, plaintiffs are not required to submit evidence to defeat a Rule 12(b)(6) motion, but need only sufficiently allege in their SAC a plausible claim. *Foley v. Wells Fargo Bank, N.A.,* 772 F.3d 63,72-73 (1st Cir. 2014)".

Likewise the SAC must be read "drawing all reasonable inferences are drawn in favor of the

Plaintiff" *Trans-Spec Truck Service, Inc. v. Caterpillar, Inc.* 524 F. 3d 315, 320 (1st Cir. 2008).

## II- Massachusetts Regulation of "bargain" sales by Retailers

5.)     Massachusetts has enacted a comprehensive set of regulations which govern the "bargain"

sales often advertised and offered to the public by retail stores such as the Defendant Rack. These

regulations have particular effect in the context of the "outlet" format such as "The Rack", because

the entire "outlet" atmosphere is designed to convince consumers to part with their money because

they are receiving discounts not otherwise available (SAC-20-22).

6.)     Title 940 of the Code of Massachusetts Regulations ("CMR"), particularly subdivisions 3 and

6 establish requirements applicable to advertised "deals" on consumer merchandise. 940 CMR 3.02

declares as "false advertising" any statement or illustration:

"Which creates a false impression of the grade, quality, make, value currency of model, size, color, usability or origin of the product offered, or which may otherwise misrepresent the product in such a manner that later, on disclosure of the true facts, there is likelihood that the buyer may be switched from the advertised product to another. Even though the true facts are subsequently made known to the buyer, the law is violated if the first contact or interview is secured by deception"
940 CMR 3.04 places the burden on the seller to establish that representations of "the value or the past, present, common or usual price of a product, or as to any reduction in price of a product" are "based on facts provable by the claimant or advertiser".

7.)     The above CMR sections, coupled with 940 CMR 3.05 bar all advertisements which

would "mislead or tend to mislead buyers" concerning the either quality of products   or

"bargains" through which consumers are being enticed to purchase.  940 CMR 3.16 makes it a

violation of M.G.L. c 93A if any regulation intended to protect consumers is violated.  Section

3.16(4) of 940 CMR declares violations of the Federal Trade Commission Act to be violations of M.G.L. c. 93A and therefore subject to its private right of action.

8.)    Section 6.01 of 940 CMR provides a comprehensive definition of the term "advertisement" which certainly includes the slips which are Exhibit A and B to the SAC. Basically an "advertisement" is any written representation made by a seller which either solicits or "encourages" a purchase. The sales tag on the item bought by Plaintiff Shaulis proclaims:

"Compare at $218.00[2]

77% Savings    49.97"

9.)    Section 6.01 defines a "price comparison" in advertising as any comparison of the Seller's current price with any other "price or representation of value".  Clearly the "crossed out price of $218.00 and the "77% savings" price are being "compared" as defined by Section 6.01. Section 6.02 makes BOTH 940 CMR 3:00 and 6.00 applicable to "any advertisement"[3]

10.)    The "Basic Principles" required of retail sales in stores such as the Rack are set forth in 940 CMR 6.03. First :

"The responsibility for truthful and nondeceptive advertising rests with the seller" 940 CMR 6.03(1).

"Misleading" or "deceptive" advertising is banned. 940 CMR 6.03(2). For a representation to be unfair or deceptive, not only direct representations are to be considered, but also "reasonable inferences" from the sales materials, and the omission or obscuration of a material fact. See 6.03 CMR(4).

11.)    If a seller knows or should know that a material representation in an advertisement is misleading "or has the tendency or capacity to be misleading", such representation is also declared

---

[2] The $218.00 has a light strike out through it – Please see Ex B to Complaint

[3] Excepting motor vehicle ads not relevant here.

deceptive. 940 CMR 6.05 establishes the standards for advertisements based upon price comparisons, such as are set forth in Exhibits A and B of the SAC. In order for a price comparison to not be *per se* deceptive, it must meet the standards established in 6.05(1) through (17), which are to be "liberally construed", in favor of the consumer.

12.)   First, the Rack's price comparison shown in Exhibit B to the SAC, which proclaims a "77% Savings", is deceptive because it does not disclose the basis of the calculation. The Rack's label (an "advertisement" under the Code) fails to disclose where and when the item sold for $218.00 as claimed by the Defendant. See 940 CMR 6.05(2). The SAC alleges that it NEVER sold for the $218 (SAC paragraph 25).

13.)   The sole exception is when the Seller itself, sold the item at the "compare at" price "openly and in good faith for a reasonably substantial period of time in the recent past" 940 CMR 6.05(3)(a) something which never happened here (SAC paragraphs 6, 10, 11, 25).

14.)   Section 6.05(4) establishes various "safe harbor" rules for what qualifies as prior sales at the comparison price in an open and reasonable manner. For example, the seller would have to demonstrate that 40% of the items sold in the last 6 months were at the "comparison" price, or offered "openly and in food faith" "for the 14 days immediately preceding the dissemination date". Such "safe harbor" qualifications, if they exist, would be affirmative defenses, but they have nothing to do with the well plead allegations of the SAC and are not entitled to consideration in a motion to dismiss.

**III-Allegations of the SAC relating to violations of the Code of Massachusetts Regulations.**

15.)   With respect to any  "compare at" bargain price advertised by the Rack, there are three logical possibilities: (a) The Rack previously sold the  item and in order to comply with the CMR's

plus has saved the relevant data; (b) The Rack never sold the item, in which case its sales labels must disclose the "basis" of the percentage saving claimed; or (c) the Rack has violated the CMR's and therefore by definition is engaging in deceptive advertising which also violates M.G.L. c 93A according to 940 CMR 3.16.

16.)   Neither Exhibits A or B have any disclosure by Defendant The Rack concerning what seller other than the Rack, if any, offered the described item for the price of $218.00. Therefore, Defendant Rack must meet the tests of "price comparison" applicable to sales by the Rack or it has *per se* engaged in fraudulent and deceptive practices in violation of 940 CMR 6.05(2) since the Rack has not "clearly and conspicuously" identified the basis of the claimed price comparison in the sale offering. See SAC Exhibit B. Obviously simply stating that there is a 77% savings at the current price does not disclose the <u>basis</u> of the calculation, it is simply an arithmetic result.

17.)   On the other hand, if the Rack claims that the "COMPARE AT" on its own label (SAC Exhibit B) represents a comparison to its own former sales price for the identical item, then it STILL is engaging in an unfair and deceptive trade practice unless the item was being offered for sale at the higher price (here $218) on the day it was first advertised as also being offered for sale at $49.37. Otherwise   the "time period" when the product was offered at $218.00 must be "specifically identified" in the advertisement. A cursory examination of the label (Exhibit B to the SAC) demonstrates that there is no time period of any nature revealed. Please see 940 CMR 6.05(8).

18.)   Under 940 CMR 6.14(1) seller is required to keep data sufficient to "substantiate the material representations it makes in an advertisement". Failure to keep these records for at least 6 months past the last offering of an item is itself a deceptive trade practice.

19.)   Paragraphs 3-6 of the Second Amended Complaint (SAC) allege that the "COMPARE AT" prices advertised by the Rack are <u>not</u> bona fide former prices as defined by the regulatory

framework established by the applicable CMR's but were fictitious amounts intentionally selected to create the appearance of gigantic markdowns. Since the Rack did not specify on its sales labels the "basis" of the "COMPARE AT" markdown, either it has *per se* violated the CMR's or it MUST have in its possession data demonstrating its own prior sales of the identical item within the relevant time frames established by the CMR's. This practice by the Rack creates the illusion of discounts (SAC 19-22).

19.1.)   Indeed once the purchase is consummated the deception is further perfected through sales slip which proclaims to the purchaser "Congratulations! You saved more than you spent. You are a shopping genius!"

19.2.)   Defendant discounts "shopping genius" language in its Memorandum claiming that the purchase was made and there was no reliance. However common sense says this discourages returns and increases repeat sales. Its "advertising" under 940 CMR and it is deceptive.

20.)   Specifically the Plaintiff Shaulis alleges that the Rack <u>never</u> offered the item described in Exhibit A to the SAC for the advertised "COMPARE AT" price. See SAC paragraph 25. Plaintiff alleges that because the label told her that she saved 77%, that she received an actual bargain. SAC Paragraph 24. There was no "bargain".

21.)   Paragraph 37.1 of the SAC lists numerous additional examples of the pricing schemes and tactics utilized by the Defendant. Specific products are listed. For example, Paragraph 37.1(c) notes a Tailorbird blazer offered at $89.97 on 12/6/14, claiming to represent an "82% discount from the ""compare at" price of $499.00. The paragraph further alleges that a thorough internet search could find no one offering the product anywhere except at the The Rack and for a price of $89.97. The label did not disclose any "basis" for the claimed 82% discount, as is required.

22.)   940 CMR 6.05 declares that when a consumer is not provided with information from which the consumer may understand the price comparison, consumer abuse occurs. The public policy of the Commonwealth is that "comparative pricing" advertisements must provide "accurate and meaningful guidance" to the consumer. See 940 CMR 6:00. Statements of fictitious discounts are neither accurate or meaningful, but false and deceptive, and provide a foundation for all counts of the SAC as is argued in the particularized section below.

23.)   Another example is set forth in paragraph 37.1(h). A Brooks Brother's shirt was tagged on 12/6/14 as being for sale at $49.97 as opposed to a "COMPARE AT" price of $92. In fact there was no such identical shirt ever sold for $92.00, but the Rack shirt was of a lesser quality than the classic Brooks Brother's shirt to which it was compared. Such a bogus price comparison violates 940 CMR 3:00 *et seq* and 940 CMR 6:01 *et seq* as set forth above.

24.)   Additionally, not only is the Rack labeling as to price misleading, but there is no effort to disclose to the consumer that the Brooks Brother's shirt (or other merchandise) sold at the Rack in Danvers is NOT of the identical quality and material as the shirts being sold at the main line Brooks Brothers store on Newbury St in Boston (or other locations).  See SAC Paragraph 37.1(h).  Under 940 CMR 6.03(2) and (4), the advertising by the  Rack of Brooks Brothers shirts, claiming a very substantial bargain, but failing to disclose that the consumer is not paying for a real "Main line" Brooks Brother's shirt is deception by omission, and therefore this offering violates the CMR's on several counts. Pursuant to 940 CMR 3.05 a seller is required to affirmatively disclose any "additional relevant information" relating to the "construction, durability...or life expectancy" of products. 940 CMR 3.16 requires affirmative disclosure of any information which would influence the "buyer or prospective buyer not to enter into the transaction".  Lack of authenticity creates a "False impression" in violation of 940 CMR 3.02(2).

25.)    Is it not a reasonable inference that consumers who are led to believe that they are purchasing products of much higher value originating at from main line stores, but are instead receiving "knock offs" manufactured NOT for the main line stores, but specifically to be sold at "outlets" and of lesser quality, have been subjected to a deceptive trade practice? See SAC paragraphs 20-22. A "False impression' is created in the mind of the consumer in violation of 940 CMR 3:02(2), a general misrepresentation under CMR 3.05 and 3.06

26.)    If, as the Rack improperly contends in its Motion to Dismiss, that its consumers are all happy and received the "benefit of their bargain" and thus suffered no damage, why not disclose to them the true bargain they are making – the "bargain" based in illusion, in violation of the Code. Let the consumer know that the "COMPARE AT" declaration is fictitious since there is no price or quality comparison which comply with the CMR's. A "outlet" lie the Rack is no longer a place to purchase top quality product at a genuine price reduction. Instead the Rack offers a top quality label on a product deliberately manufactured to lower quality standards but improperly compared to the "real thing". SAC paragraphs 3-6, 44-46.

27.)    As is alleged in paragraph 20 of the SAC, the very term "outlet" store conveys to the public the idea that the products at these stores are of the same quality as main line stores that were formerly offered at much higher prices.  Certainly many consumers would be interested in obtaining clothing formerly offered at higher prices, but offered at "outlets" out of season, or as last year's unsold inventory.  Imagine a label that stated "Identical Brooks Brother's shirts sold on Newbury Street last year for twice as much". It is likely that a stampede reminiscent of the yearly purchase of wedding gowns at our old and fondly remembered "Filene's Basement" would ensue, quickly gobbling up such a legitimate bargains.

28.)    Instead as the popularity of "outlet" distribution grew, stores like the Rack were faced with a common sense and practical problem – lack of sufficient inventory left over from main line stores. In widely distributed public document about its 2014 Q4 earnings Nordstrom declared that the Rack was its number source of new customers in 2014 with 27 new The Rack stores opened in the US in 2014 as opposed to only 2 mail line Nordstrom stores. In its 2013 Annual Corporate Report noted that the number of The Rack stores had grown from 48 ten years before to a projected 230 by the end of 2016.

29.)    It is a reasonable inference (if not a logically mandated conclusion) that there simply are nowhere near enough "left overs" from Nordstrom (or anywhere else) to fill the exploding number at the Rack stores (SAC 19-20)  Nevertheless the Rack "experience" drives sales, so it was necessary to develop a ruse – let the Consumers fondly remember the Outlets of yore while having lower quality products specifically manufactured for sale at an Outlet (SAC paragraph 22). The lower quality allowing for a lower price creates the illusion of a bargain. See paragraphs 20-21 of the SAC.

30.)    These tactics fly in the face of the detailed regulations established by 940 CMR 3:00 et seq and 6:00 et seq.  940 CMR 3.02(2) prohibits any statement or illustration in consumer retail sales "which creates a false impression of the grade, quality, make, value…usability or origin of the product offered".  As alleged in paragraph 6 of the SAC the entire "outlet store" motif is designed as an advertising ploy to falsely convince consumers that they are buying "main line" retail designer brand goods at reduced prices (such as our example of Brooks Brothers shirts) . According to the CMR's an "advertisement" is not limited to a price tag, it is the also:

"any oral, written, graphic or pictorial representation made by a seller in the course of the solicitation of retail business which encourages a person to purchase a retail product"  940 CMR 6.01 "Advertisement".

31.)    As paragraphs 20-21 of the SAC allege, the "outlet store" motif fashioned by Nordstrom through its The Rack "outlet" stores creates the illusion of discount pricing without the substance of it through false and deceptive pricing schemes and by convincing a consumer that they are receiving "main line" goods for bargain prices. Such activity violates numerous sections of the Code of Massachusetts Regulations and therefore unequivocally gives rise to a cause of action under M.G.L. c. 93A.

**IV- Reply to of Section III of Defendant's Argument concerning  specific causes of action.**

**A.  Defendant's claim that all causes of action are deficient misunderstands Massachusetts law.**

32.)    Defendant The Rack argues that all of Plaintiff's causes of action are really claims of common law fraud and therefore must meet the Rule 9(b)' heightened pleading standard. However as seen above, violations of the relevant sections of 940 CMR 3 and 6 are declared by those regulations as per se violations of M.G.L. c 93A. *Saia v. Bay State Gas Co.*, 81 Mass.App.Ct. 1127, 965 N.E.2d 224 (2012) holds:

"General Laws c. 93A, § 9, provides a right of action to a consumer " who has been injured by another person's use or employment of any method, act or practice declared to be unlawful by section two [of chapter 93A] **or any rule or regulation issued thereunder."** A business practice is deceptive for purposes of chapter 93A if it "has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." *Aspinall v. Philip Morris Co.*, 442 Mass. 381, 396 (2004)" (emphasis supplied).

33.)    Therefore with respect to Count V (c. 93A) of the Plaintiff's SAC, the Defendant's proposition of the applicability of Rule 9(b) is simply incorrect. Plaintiff Shaulis has amply alleged specific violations of the Code of Massachusetts Regulations, set forth in detail above which are also violations of M.G.L. c. 93A. Please see 940 CMR 3.16.

### 1.    Plaintiff sufficiently alleges common law fraud.

34.)    Defendant Rack opines on page 9 of its Memorandum that Plaintiff Shaulis has failed to allege a false statement of material fact. However allegations of false statements abound. SAC paragraphs 24-25 allege that Plaintiff was induced by purchase the item described on Exhibits A and B by the false representation of the Defendant that she was obtaining an item which had sold for $218, but was being sold to her for 77% off. The SAC further alleges that the 77% discount was false and induced her to purchase the item. The date and price of the sale are alleged (SAC –Ex A). Paragraph 26 alleges that all class members are similarly induced to make purchases at the Rack, based upon the untrue statements of the Rack that they are making large savings. SAC paragraphs 37.1 (a),(c),(d),(e),(h) allege specific price comparisons that are false and deceptive under the CMR's, particularly 940 CMR 6.05.

35.)    To sustain the Defendant's contention, one would have to buy into the fantasy that the claim by the Rack that a large discount is being offered is not a material inducement to make a purchase. The consumer is being told you can get a $218 for 77% off if you pay now.  Likewise, the SAC alleges the advertised "discount" is false because the item never sold for $218 (SAC at 25) and that the Plaintiff was thereby deceived. Defendant illogically argues that Plaintiff does not specify that Defendant "knew" the represented discount was false. The correct fraud standard is that a Defendant know "or should have known" upon reasonable inquiry. The Defendant calculated and advertised the alleged saving. From where did it obtain "compare at" the price to calculate the saving? Since 940 CMR 6:14 requires a retailer to keep records which substantiate its claims of "discount" , we may hold the Defendant to be aware of its own records or to have made "reasonable inquiry" of its own records before brandishing a gigantic discount before a public that retailers know are eager to obtain bargain, and then telling a buyer that he/she is a "genius" for having been this duped. SAC EX B.

36.)     Therefore concerning Count I (fraud), plaintiff has alleged a specific time and place of purchase (SAC- Ex A & B) Plaintiff has further alleged a misrepresentation of a false discount (SAC-24-25) which was relied upon by Plaintiff in making her purchase (SAC-24), which caused her to part with money (SAC-24) should not otherwise have spent. SAC-26 alleges that the reliance was reasonable because consumers are generally allured by the "impression of savings". As seen above, the Rack, being required by the logic of its own calculation and the requirements of the CMR's knew or should have known of the falsity of its advertising statement which induced the purchase.

37.)     All of the Rule 9(b) requirements are amply met and the fraud Count may not be dismissed. Specific times, places, statements, reliance and detriment are all alleged and the Rack's Memorandum opines basically that the Defendant got a nice piece of clothing for a price she was willing to pay so there is no fraud and no harm. Such an opinion may be properly explored on a deposition of the Plaintiff or as an affirmative defense but does not find a proper place in a motion to dismiss where the allegations are to be taken as true and reasonable inferences drawn in favor of Plaintiff.

## 2. Breach of Contract

38.)     Defendant the Rack on pages 14-15 of its Memorandum correctly states that contracts in Massachusetts carry a covenant of good faith and fair dealing. What constitutes "fair dealing" by department stores in Massachusetts is substantially defined in the CMR's as we have seen. The very regulations governing the sale on which the contract is based are not to be ignored. It is a basic principle of Massachusetts law that the "responsibility for truthful and nondeceptive advertising rests with the seller" 940 CMR 6.03(1). Plaintiff alleges that the very basis of the sale – the claimed 77% discount, was false and under the record keeping requirements of the CMR's the

falsity of that core issue was actually or constructively known to Defendant Rack but hidden from

Plaintiff.

39.)   Inexplicably, the Rack states on page 15 of its Memorandum that Plaintiff does not allege

that the price tag was false. That statement of the Memorandum is itself false. SAC paragraphs 24-25

explicitly allege that Defendant advertised a false sale (i.e. the 77% discount) to induce the purchase.

SAC paragraph 58 alleges that the claimed $218.00 "compare at" price which generated the 77%

savings claimed by the Defendant "does not exist in the marketplace" – i.e. it's a fiction. *T.W.*

*Nickerson, Inc. v. Fleet Nat. Bank*, 456 Mass. 562, 570 924 N.E.2d 696 (2010) holds:

> "The covenant of good faith and fair dealing requires that "neither party shall do anything that will
> have the effect of destroying or injuring the right of the other party to the fruits of the contract."
> *Anthony's Pier Four, Inc. v. HBC Assocs.*, supra at 471-472, 583 N.E.2d 806, quoting *Druker v. Roland
> Wm. Jutras Assocs.*, 370 Mass. 383, 385, 348 N.E.2d 763 (1976)."

40.)   In order for the covenant to be satisfied the parties to it "must remain faithful to the

intended and agreed expectations" *Uno Restaurants, Inc. v Boston Kenmore Realty Corp. 441* Mass. 376,

385 (2004). Based upon Defendant's advertising of a 77% discount, which was false the Defendant

created an expectation in the Plaintiff that she was receiving a special value for her money that

simply was not there. Defendant's claim that Plaintiff received the benefit of her bargain and

therefore all is well has no foundation in fact.

### 3. Unjust enrichment –Count III

41.)   Defendant incorrectly assumes that unjust enrichment claims in Massachusetts are in reality

fraud claims, but then cites *Massachusetts Eye and Ear Infirmary v QLT Phototherapeutics* 552 F. 3d 47

(2009) for the elements of an unjust enrichment claim, which case contains no mention of "fraud"

as being an element of the cause of action. Indeed *Phototherapeutics* is a good case for the Plaintiff as it

notes that considerations of equity and morality are central to unjust enrichment claims. See

*Phototherapeutics* at 57.  See also *Salamon v. Terra*, 394 Mass. 857, 477 N.E.2d 1029, 1031 (Mass.1985). The "Mortality" of consumer sales transactions in Massachusetts rest upon 940 CMR 3 and 6.

42.)   In this case Plaintiff was induced to part with her $49 through the Defendant's misrepresentation that she was receiving a bargain "77%" off – a bargain that the Defendant knew or upon reasonable inquiry of its own records would have known was false. She was then assured that she was a "genius" for having been so misled (SAC – Ex B). Such false advertising the essence of unfairness and therefore supports an unjust enrichment claim.

## 4.    Count IV – Violations of CMR and FTCA.

43.)   Under Massachusetts law a violation of the FTCA gives rise to a cause of action under Massachusetts law. Please see 940 CMR 3.16(4). Plaintiff filed this action in state court, which defines such violations for state purposes as being unfair practices. The FTCA guidelines for false advertisements are set forth in SAC paragraph 65, dealing with the case, as here, where "the former price being advertised is not bona fide".  See SAC paragraphs 24-25, 58. Paragraph 58 of the SAC is not limited to just The Rack sales, it flatly declares that the $218.00 "compare at" price "does not exist within the marketplace".

44.)   16 C.F.R. 233.2 ("Retail price comparisons") simply does not support the argument advanced by Defendant Rack on page 19 of it Memorandum. 233.2(a) states unequivocally that where a discount is advertised the price to which the discounted price is compared must be a real one, and that there are a sufficient number of sales within the trade area at the higher price. The Defendant disingenuously asserts that "comparative pricing" is not a violation of the FTCA. That much is correct. However, comparative pricing in which the higher price is fictitious IS a violation. Fictitious pricing is alleged in the SAC. See SAC 24-25, 37.1, 58.

"The Legislature, in G. L. c. 93A, § 2 (b), has mandated that Massachusetts courts, in construing which acts are deceptive, must be guided by interpretations of that term as found in the analogous Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45 (a) (1). Historically, the standard test for deception prohibited by the FTC Act was whether the act or practice had the capacity or tendency to deceive the general public, rather than whether it was relied on or resulted in actual deception. See, e.g., *Federal Trade Comm'n v. Colgate-Palmolive Co.,* 380 U.S. 374, 391-392 (1965)" See *Aspinall v. Philip Morris Companies, Inc.,* 442 Mass. 381, 813 N.E.2d 476 (2004).

## 5. Reply to Class Action Section of Memorandum

45.)   Defendant argues against the status of this matter as a "class action" in subsection C on page 5 of its Memorandum. However, the argument presented, where it does not totally abandon the four corners of the SAC, once again demonstrates unfamiliarity with Massachusetts law. For example the recent Massachusetts Supreme Judicial Court case of *Bellermann v. Fitchburg Gas & Electric Light* Co., 470 Mass. 43,52-53, 18 N.E.3d 1050 (2014) holds:

"Plaintiffs may bring a class action under G. L. c. 93A if they can show that they may seek relief for an unfair or deceptive act or practice under G. L. c. 93A, § § 9 (2) or 11, that the act or practice " caused similar injury to numerous other persons similarly situated," and that they would " adequately and fairly represent[ ] such other persons." G. L. c. 93A, § § 9 (2), 11. Where appropriate, " the public policy of the Commonwealth strongly favors G. L. c. 93A class actions." Feeney v. Dell Inc., 454 Mass. 192, 200, 908 N.E.2d 753 (2009). In considering certification under G. L. c. 93A, a judge must bear in mind the " 'pressing need for an effective private remedy' ... and that 'traditional technicalities are not to [470 Mass. 53] be read into the statute in such a way as to impede the accomplishment of substantial justice.'" Aspinall v. Philip Morris Cos., 442 Mass. at 391-392, quoting Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 605-606, 477 N.E.2d 116 (1985)".

46.)   Further, at the "complaint" stage of the proceeding we have not reached the "class certification" phase, which is by separate Motion. Even then, the standards for certification for a M.G.L. c 93A claim are more lenient than traditional Rule 23 standards See *Salvas v. Wal-Mart Stores, Inc.,* 452 Mass. 337, 370, n66, 893 N.E.2d 1187 (2008) . As to the non 93A Counts a Plaintiff does not bear any evidentiary burden but need only provide "information sufficient to enable the motion judge to form a reasonable judgment" that the class meets the relevant requirements. *Weld v. Glaxo Wellcome Inc.,* 434 Mass. 81, 87, 746 N.E.2d 522 (2001). We are not at that stage however.

47.)    The Rack's argument on pages 6-7 of its Memorandum seeks to overturn Massachusetts' carefully crafted regulations set forth in 940 CMR Sections 3 and 6 (herein discussed in detail) and restore the erstwhile doctrine of "let the buyer beware". The Rack simply does not understand that the labels on its clothing with their "COMPARE AT" declarations of enormous percentage savings constitute both underlined advertisements and underlined false advertisements under the CMR's. The duties imposed by the CMR's on retailers do not allow for the retailers such as the Rack to assume that the buyer merely wants the "best price" and therefore would buy whether a discount was advertised or not (Defendant's Memorandum, page 7). Under the Rack's logic, sales of products at the cheapest prices regardless of misrepresented quality and discounts are really what consumers want. The Rack itself buys into the proposition that deception is a social good benefiting those cheated because, after all, they think they got a good price. The Rack apparently argues that the "label in all that matters – similar to buying a five ($5.00) dollar "Rolex" in a Hong Kong Bazar.

48.)    Likewise the Rack's argument that Plaintiff ought to have no concern because the Rack offered to "pick her off" by offering her a refund, is disingenuous.  One simply cannot pay off the lead class member and settle the case. See *Reniere et al.*[4] *v Alpha Management Corporation et al* MICV2013-560 Middlesex Superior Court (2014), citing *United States Parole Comm'n v. Geraghty*, 445 U.S. 388,402 (1980).  See also *Paul Reniere et al. v. Alpha Management Corporation et al* at Appendix 2.

49.)    Last, the Plaintiff is not required at this stage of the proceedings to provide mathematical calculations of damage as is requested by Defendant on page 6 of its Memorandum. In its Removal Petition, Defendant Rack argued that the allegations of the SAC plausibly alleged foretold over $6 million in damages, not a cent of which the same Defendant can find in arguing its Motion to Dismiss. Also, this is not the stage to determine "was the advertising likely to deceive the public" as

---

[4] For the convenience of the Court, a copy of this case is attached hereto as an Exhibit, at the end of the similarly attached CMR's.

Defendant desires asked. "advertising" in the current context need not be anything more than the "COMPARE AT" label on the product with its assertion of great savings. The Defendant seems to suggest on page 6 of its Memorandum that if Defendant can suggest there may be several factors to be considered in proving damages, then Defendant's artful obfuscation forms a basis to dismiss the SAC. As might be expected Defendant cannot find a case to cite to support such a proposition.

## CONCLUSION

For the reasons stated above, the Defendant's Motion to Dismiss should be denied in its entirety.

In the alternative, Plaintiff requests leave to amend[5] to provide further factual detail.

By: /s/ *S. James Boumil*
S. James Boumil, Esq.
(BBO#050940)
Boumil Law Offices
120 Fairmount Street
Lowell, MA 01852
Tel:  978-458-0507
E-mail:

By: /s/ *Konstantine W. Kyros*
Konstantine W. Kyros, Esq.
(BBO#634442 )
Kyros Law Offices, P.C.
17 Miles Road
Hingham, MA 02043
Tel:  800-934-2921
E-mail:

Certificate of Service:

I S. James Boumil, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants (if any) on 3/13/15.

/s/ *S James Boumil*
_____. 3/13/1015
S. James Boumil, Esq.

---

[5] First Amendment is State Court made technical corrections, the Second added the 93A count after the passage of the required 30 days, thus there has not been an amendment adding material facts. Defendant had not filed an appearance or service made at the time of either amendment.