UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        )
**JUDITH SHAULIS,**                     )
                                        )
        **Plaintiff,**                  )
                                        )    **Civil Action No.**
    **v.**                              )    **15-10326-FDS**
                                        )
**NORDSTROM INC., d/b/a**               )
**NORDSTROM RACK,**                     )
                                        )
        **Defendants.**                 )
_____)

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS**

**SAYLOR, J.**

        This is a class action arising out of the alleged deceptive and misleading labeling and

marketing of merchandise.  Plaintiff Judith Shaulis has filed suit against defendant Nordstrom,

Inc., doing business as Nordstrom Rack.  The complaint alleges that Nordstrom "misrepresented

the existence, nature, and amount of price discounts on products" by "purporting to offer

discounts off of fabricated former prices."  (Second Am. Compl. ¶ 2).  Specifically, the

complaint alleges that the price tags of Nordstrom Rack products represented "Compare At"

prices that did not represent a bona fide price at which Nordstrom formerly sold these products

or at which these products were sold elsewhere.

        On February 18, 2015, defendant filed a motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(6) for failure to state a claim.  In support of its motion to dismiss, defendant submitted an

attorney affidavit with attachments.  Plaintiff has moved to strike the affidavit and its

attachments.

The complaint alleges that plaintiff purchased a cardigan sweater at Nordstrom Rack for $49.97.  The price tag included a "Compare At" price of $218.00.  The complaint alleges that the sweater had never been sold at Nordstrom, or anywhere else, for $218.00, and that therefore the pricing language was illegal.

Massachusetts regulations appear to prohibit the alleged practice.  However, plaintiff has suffered no injury in any traditional sense:  she purchased a sweater for $49.97 that was, in fact, worth $49.97.  She does not complain about the quality of the materials or the workmanship, or otherwise suggest that the sweater was worth less than what she paid for it.  She nonetheless alleges that she was enticed to purchase the sweater by a price tag that made her believe she was obtaining a deal.

Because the complaint does not allege a legally cognizable injury, and for the other reasons set forth below, the motion to dismiss will be granted.

## I.      Background

### A.      Factual Background

Nordstrom, Inc. is a Washington corporation with a principal place of business in Seattle, Washington.  (Second Am. Compl. ¶ 13).  It operates a chain of department stores, including five Nordstrom Rack stores in Massachusetts.  (*Id.* ¶ 14).

The complaint alleges that "Nordstrom misrepresented the existence, nature, and amount of price discounts on products:  (a) manufactured exclusively for Nordstrom Rack and sold at Nordstrom Rack; and (b) manufactured by other brands and sold at Nordstrom Rack . . . by purporting to offer discounts off of fabricated former prices."  (Second Am. Compl. ¶ 2). According to the complaint, price tags on Nordstrom Rack products contained the sale price and "Compare At" prices that purported to represent bona fide prices at which Nordstrom formerly

sold those products or those products were sold elsewhere on the market within three months. (*Id.* ¶ 3).  The complaint alleges that "[i]n fact, Nordstrom sells certain goods manufactured by third-party designers for *exclusive sale* at its Nordstrom Rack stores and other outlet stores, which means that such items were never sold—or ever intended to be sold—at the 'Compare At' prices advertised on the price tags."  (*Id.* ¶ 5).  It alleges that "[m]ost Nordstrom Rack [p]roducts are seldom if ever offered for sale at the Nordstrom main line retail stores and are typically of lesser quality."  (*Id.*).

The complaint alleges that Judith Shaulis shopped at the Nordstrom Rack in Boston, Massachusetts on November 1, 2014.  (*Id.* ¶ 24).  While shopping, she observed merchandise with price tags that stated the price at which the merchandise could be purchased.  (*Id.*). Appearing above those prices, the price tags listed "Compare At" prices.  (*Id.*).  Shaulis purchased a cardigan sweater for $49.97 that had a "Compare At" price of $218.00.  (*Id.*).  The price tag identified the difference between the two numbers as representing "77%" worth of savings.  (Second Am. Compl. Exs. A-B).  The complaint alleges that Shaulis was "[e]nticed by the idea of paying significantly less than the 'Compare At' price charged outside of Nordstrom Rack."  (Second Am. Compl. ¶ 24).  The sales receipt for the cardigan purchased stated "You SAVED: $168.03 Congratulations!  You saved more than you spent.  You're a shopping genius!"  (*Id.*).  The complaint further alleges that "Nordstrom never intended nor did it ever sell the [cardigan] at the represented 'Compare At' price."  (*Id.*).  It does not directly allege that the cardigan was never sold anywhere by anyone at the "Compare At" price.  However, the complaint alleges that the sweater's "'Compare At' price does not exist in the market place within the meaning of the requirements of the Code of Massachusetts Regulations."  (*Id.* ¶ 58).

The complaint further alleges "certain typical examples of the pricing schemes and tactics utilized by" Nordstrom.  (*Id.* ¶ 37.1).  On December 6, 2014, the Nordstrom Rack store in Danvers, Massachusetts, offered a Lafayette 148 New York "Stretch Wool Jacket" for a price of $89.70.  (*Id.* ¶ 37.1(a)).  The price was identified as an 85% discount from the "suggested retail price" of $598.  (*Id.*).  According to the complaint, a "thorough search of internet sites offering this product could find non[e] offering the product for anywhere near $598.00."  (*Id.*).  Nordstrom's main store website listed the product as "not available."  (*Id.*).

On that same day, the Nordstrom Rack in Danvers also offered a Tailorbyrd "Aubergine Sharkskin" blazer for a price of $89.97.  (*Id.* ¶ 37.1(c)).  The blazer had a "Compare At" price of $499.  (*Id.*).  The complaint alleges that the blazer was "unavailable on the Tailorbyrd website, and anywhere else that could be found, except at the Rack and at the price of $89.97," and that "[t]here is no evidence that this product was ever sold in any relevant market for any meaningful period of time for a price of $499, against a thorough search for such price and therefore upon informed information and belief, it did not."  (*Id.*).

The Nordstrom Rack in Danvers also offered for sale an "Olivia Sky" sweater for a price of $54.97.  (*Id.* ¶ 37.1(d)).  The sweater had a "Compare At" price of $168.  (*Id.*).  The complaint alleges that "[t]here is no evidence that this product was ever sold in any relevant market for any meaningful period of time for a price of $168, against a thorough search for such price, and therefore upon informed information and believe it did not."  (*Id.*).  Another "Olivia Sky" sweater was offered for sale for $29.97.  (*Id.* ¶ 37.1(e)).  The sweater had a "Compare At" price of $58.  (*Id.*).  According to the complaint, "[t]here is no evidence that this product was ever sold in any relevant market for any meaningful period of time for a price of $58.00 against a thorough search for such price, and therefore upon information and belief it did not."  (*Id.*).

4

Finally, the Nordstrom Rack in Danvers offered for sale a Brooks Brothers shirt, "Blue #100014930." (*Id.* ¶ 37.1(h)). It was offered for sale at $49.97, and had a "Compare At" price of $92. (*Id.*). The complaint alleges that the "'Compare At' shirt offered for $92 are [sic] in actuality NOT the same shirts as Nordstrom carries, but are [sic] instead are [sic] 'Classic' Brooks Brothers shirts carried by Brooks Brothers and made of trademarked material 'Supima' cotton." (*Id.*). In contrast, the Brooks Brothers shirts for sale at the Nordstrom Rack "are not labeled as made from Supima and are not of the quality of the Brooks Brothers 'Classic' line." (*Id.*).

The complaint does not allege that Shaulis or anyone else purchased any of these "certain typical examples."

### B.     Procedural History

On November 6, 2014, Shaulis filed a complaint in this action in Suffolk Superior Court. She filed an amended complaint on December 8, 2014, and a second amended complaint on December 24. The second amended complaint is brought on behalf of herself and all those similarly situated. The proposed class consists of "[a]ll individuals residing in the Commonwealth of Massachusetts who, within the applicable statute of limitations preceding the filing of this action . . . , purchased Nordstrom Rack Products." (*Id.* ¶ 29). The second amended complaint alleges claims for fraud, breach of contract, unjust enrichment, violations of the Code of Massachusetts Regulations and the Federal Trade Commission Act, and violations of Mass. Gen. Laws ch. 93A. (*Id.* ¶¶ 38-73).[1] On February 11, 2015, Nordstrom removed the action to this Court.

---

[1] The complaint alleges that a demand letter as required by Mass. Gen. Laws ch. 93A § 9(3) was sent to defendants more than 30 days before "the filing of this First Amended Complaint." (Second Am. Compl. ¶ 71). The demand letter was attached to the complaint as Exhibit C. (*Id.* Ex. C). The complaint further alleges that "[n]o response has been received to the [demand letter] as of the date of this document." (*Id.*). However, in its motion to

On February 18, 2015, defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  In support of its motion to dismiss, defendant submitted an affidavit from its attorney Joseph Duffy with attachments.  Plaintiff has moved to strike the affidavit and its attachments.[2]

## II.    Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom."  *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief."  *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted) (internal quotation marks omitted).

Ordinarily, a complaint need only contain "a short and plain statement of the claim

---

dismiss, Nordstrom included a declaration by attorney Joseph Duffy, which purports to include Nordstrom's response to plaintiff's demand letter.  (Duffy Decl. ¶ 3, Ex. B).  Plaintiff admits that Nordstrom in fact submitted a response to the demand letter, but requests that it be struck.  (Pl.'s Mot. Strike 4).

[2] Specifically, plaintiff has moved to strike Nordstrom's reply to the demand letter and photos of Nordstrom Rack's website.  It contends that the motion to dismiss is limited to the four corners of the second amended complaint, and that because the attachments "are both irrelevant and incomprehensible" they should be struck.  (Pl.'s Mot. Strike 4).  Neither the reply to the demand letter nor the photos of Nordstrom Rack's website will have any effect on the Court's analysis.  Accordingly, plaintiff's motion to strike will be denied as moot.

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  For that reason, "great specificity is ordinarily not required to survive a Rule 12(b)(6) motion."  *Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B.,* 958 F.2d 15, 17 (1st Cir. 1992).  However, under Fed. R. Civ. P. 9(b), in cases "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  The purposes of that requirement are (1) to give the defendants notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to using discovery as a fishing expedition; and (3) to safeguard defendants from frivolous charges that might damage their reputations.  *See In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 170 (D. Mass. 2003) (quoting *New England Data Services, Inc. v. Becher*, 829 F.2d 286, 288 (1st Cir. 1987)); *see also McGinty v. Beranger Volkswagen, Inc.*, 633 F.2d 226, 228-29 (1st Cir. 1980).  Under the 9(b) heightened pleading requirement, a complaint must state the time, place, and content of the alleged false or fraudulent representations to state a claim for fraud.  *Epstein v. C.R. Bard, Inc.*, 460 F.3d 183, 190-91 (1st Cir. 2006).  The Rule 9(b) pleading requirement applies both to general claims of fraud and also to "associated claims where the core allegations effectively charge fraud."  *North Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009); *see Martin v. Mead Johnson Nutrition Co.*, 2010 WL 3928707, *3 (D. Mass. Sept. 30, 2010) ("A claim under Chapter 93A that involves fraud is subject to the heightened pleading requirement.").

## III.   Analysis

### A.      Count Four:  Violation of CMR and FTC

Count Four alleges a claim for violations of the Code of Massachusetts Regulations and

the Federal Trade Commission Act.  Specifically, Count Four alleges that Nordstrom "violated

and continues to violate 940 [Mass. Code Regs.] 6[.]01" and "violated and continues to violate

the [Federal Trade Commission Act], 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), as well as FTC

Guidelines published at 16 C.F.R. § 233."  Count Five alleges a claim for violation of Chapter

93A that is predicated on violation of the underlying regulations.  The Federal Trade

Commission Act does not provide for a private cause of action.  *See Marini v. Dragadosusa*,

2012 WL 4023674, *1 (D. Mass. Sept. 11, 2012) ("[T]he Federal Trade Commission

Act . . . does not provide a cause of action by private persons such as the plaintiff."  (citing

*Holloway v. Bristol-Myers Corp.*, 485 F.2d 986, 1002 (D.C. Cir. 1973))).  Likewise, there is no

private right of action under the Code of Massachusetts Regulations.  As a result, Count Four

will be dismissed for failure to state a claim.

## B.   Count Five: Violation of Chapter 93A

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2(a).  Conduct

is unfair or deceptive if it falls "within any recognized or established common law or statutory

concept of unfairness."  *VMark Software v. EMC Corp.*, 37 Mass. App. Ct. 610, 620 (1994).

Pursuant to 940 Mass. Code Regs. 3.16, "[a]n act or practice is a violation of [Mass. Gen. Laws]

Ch. 93A, s.2 if: . . . (3) [i]t fails to comply with existing statutes, rules, regulations or laws, meant

for the protection of the public's health, safety, or welfare promulgated by the

Commonwealth . . . ; or (4) [i]t violates the Federal Trade Commission Act, the Federal

Consumer Credit Protection Act or other Federal consumer protection statutes within the

purview of [Mass. Gen. Laws ch.] 93A, s.2."  The Supreme Judicial Court has interpreted the

"regulation as being bound by the scope of [Mass. Gen. Laws ch.] 93A, § 2(a).  In other words,

under 940 Mass. Code Regs. § 3.16(3) a violation of a law or regulation . . . will be a violation of c[h]. 93A, § 2(a), only if the conduct leading to the violation is both unfair or deceptive and occurs in trade or commerce." *Klairmont v. Gainsboro Restaurant*, 465 Mass. 165, 174 (2013). "[W]hether the particular violation or violations qualify as unfair or deceptive conduct is best discerned from the circumstances of each case." *Id.* (quoting *Kattar v. Demoulas*, 433 Mass. 1, 14 (2000)) (internal quotation marks omitted).

### 1.      **Code of Massachusetts Regulations**

Title 940 subdivisions 3 and 6 of the Code of Massachusetts Regulations establish rules governing, among other things, retail advertising and price comparisons.  Under 940 Mass. Code Regs. 3.02(2), "[n]o statement or illustration shall be used in any advertisement which creates a false impression of the grade, quality, make, value, currency of model, size, color, usability, or origin of the product offered . . . ."  Section 6.00 *et seq.* of the Code of Massachusetts Regulations applies to retail advertising.  Pursuant to 940 Mass. Code Regs. 6.01, an advertisement is defined as including a "representation . . . printed on or contained in any tag or label which is attached to or accompanies any product offered for sale."  A price comparison is defined as "any advertisement . . . of a seller's current price for a product with any other price or representation of value, whether or not such other price is actually stated in the advertisement."  940 Mass. Code Regs. 6.01.  Title 940, section 6.03(2) provides that "[s]ellers shall not use advertisements which are untrue, misleading, deceptive, fraudulent, falsely disparaging of competitors, or insincere offers to sell."  940 Mass. Code Regs. 6.03(2).  Under the regulations,

> It is an unfair or deceptive act for a seller to state or imply that it is offering any savings as to any product by making a direct or indirect price comparison, unless the seller clearly and conspicuously describes the basis for the price comparison. Notwithstanding the foregoing, a seller may claim a savings or compare a higher and a lower price without disclosing the basis for the comparison if the seller is comparing to its own former price.

940 Mass. Code Regs. 6.05(2).  In addition,

> [i]t is an unfair or deceptive act for a seller to compare its current price with its
> former price for any product, unless such former price is a bona fide, actual price
> at which the seller offered the product to the public, openly and in good faith for a
> reasonably substantial period of time in the recent past.  The burden shall be on the
> seller to show that its former price is not an inflated or exaggerated price, and that
> the seller offered the product to the public at the former price openly and in good
> faith.

940 Mass. Code Regs. 6.05(3).

## 2. <u>Federal Trade Commission Act</u>

Pursuant to the Federal Trade Commission Act, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."  15 U.S.C. § 45(a).  It is an "unfair or deceptive act or practice" to disseminate "any false advertisement . . . (2) [b]y any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in or having an effect upon commerce, of food, drugs, devices, services, or cosmetics."  15 U.S.C. § 52(a), (b).

The Federal Trade Commission's Guides Against Deceptive Pricing distinguishes between "former price comparisons," "retail price comparisons," and "comparable value comparisons."  *See* 16 C.F.R. §§ 233.1, 233.2; *see Rubenstein v. Neiman Marcus Group LLC*, 2015 WL 1841254, *5 (C.D. Cal. March 2, 2015).[3]  According to the section on former price comparisons,

> One of the most commonly used forms of bargain advertising is to offer a reduction
> from the advertiser's own former price for an article.  If the former price is the
> actual bona fide price at which the article was offered to the public on a regular
> basis for a reasonably substantial period of time, it provides a legitimate basis for

---

[3] Pursuant to 16 C.F.R. § 1.5, "[i]ndustry guides are administrative interpretations of laws administered by the Commission for the guidance of the public in conducting its affairs in conformity with legal requirements.  They provide the basis for voluntary and simultaneous abandonment of unlawful practices by members of industry.  Failure to comply with the guides may result in corrective action by the Commission under applicable statutory provisions."

> the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. § 233.1(a). The section on retail price comparisons identifies "[a]nother commonly used form of bargain advertising" as one where the seller offers "goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business)." 16 C.F.R. § 233.2(a). According to the guidelines,

> This may be done either on a temporary or a permanent basis, but in either case the advertised higher price must be based upon fact, and not be fictitious or misleading. Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area—that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

*Id.* Comparable value comparisons are described as "[a] closely related form of bargain advertising" that offers "a reduction form the prices being charged either by the advertiser or by others in the advertiser's trade area for other merchandise of like grade and quality—in other words, comparable or competing merchandise—to that being advertised." 16 C.F.R. § 233.2(c). According to the guidelines,

> Such advertising can serve a useful and legitimate purpose when it is made clear to the consumer that a comparison is being made with other merchandise and the other merchandise is, in fact, of essentially similar quality and obtainable in the area. The advertiser should, however, be reasonably certain, just as in the case of comparisons involving the same merchandise, that the price advertised as being the price of comparable merchandise does not exceed the price at which such merchandise is being offered by representative retail outlets in the area.

*Id.* Other courts have interpreted price tags with "Compared To" language as displaying a "comparable value comparison" as opposed to a "former price comparison." *See, e.g.*,

11

*Rubenstein*, 2015 WL 1841254, at *6; *Branca v. Nordstrom, Inc.*, No. 14cv2062-MMA (JMA), 13-14 (S.D. Cal. March 19, 2015).

### 3. <u>Alleged Deceptive Practice</u>

As noted, Shaulis purchased a cardigan sweater for $49.97.  (Second Am. Compl. ¶ 24). The price tag clearly stated a "Compare At" price of $218.00, and identified a "77% Savings." (Second Am. Compl. Exs. A-B).  As stated in the Code of Massachusetts Regulations, "a seller may claim a savings or compare a higher and a lower price without disclosing the basis for the comparison if the seller is comparing to its own former price."  Mass. Code Regs. 6.05(2). However, the complaint alleges that "Nordstrom never intended nor did it ever sell the [cardigan] at the represented 'Compare At' price."  (Second Am. Compl. ¶ 24).  The complaint therefore sufficiently states a violation of the Code of Massachusetts Regulations.

Contrary to Nordstrom's contention, the complaint need not allege a "false statement." Rather, for purposes of the Code of Massachusetts Regulations, containing a price comparison to something other than the seller's own former price without "clearly and conspicuously describ[ing] the basis for the price comparison" constitutes an "unfair or deceptive act."  *See* Mass. Code Regs. 6.05(2).  Therefore, the alleged violation of Mass. Code Regs. 6.05(2) constitutes an unfair or deceptive practice under Chapter 93A.  *See Klairmont*, 465 Mass. at 174.[4]

### 4. <u>Alleged Injury</u>

The complaint alleges that "Nordstrom has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive

---

[4] The complaint also purports to allege a violation of the Federal Trade Commission Act.  Because the complaint alleges a deceptive practice as defined by the Code of Massachusetts Regulations, the Court does not need to determine whether the complaint also alleges a deceptive practice under the Federal Trade Commission Act.

conduct." (Second Am. Compl. ¶ 67). It further alleges that "Nordstrom has improperly obtained money from [p]laintiff . . . As such [sic] [p]laintiff requests that this court cause Nordstrom to restore this money to [p]laintiff and all [c]lass members, and to enjoin Nordstrom from continuing to violate the [Code of Massachusetts Regulations] as discussed herein and/or from violating the [Code of Massachusetts Regulations] in the future." (*Id.*).

"Chapter 93A provides a cause of action for a plaintiff who 'has been injured.' . . . by 'unfair or deceptive acts or practices.'" *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 253 (1st Cir. 2010) (citing Mass Gen. Laws ch. 93A, §§ 9(1), 2(a)). The jurisprudence as to what constitutes an "injury" under Chapter 93A is, to say the least, somewhat muddled.

Two Supreme Judicial Court cases contain language stating or suggesting that a claim may be brought for a violation of Chapter 93A even if the violation did not cause any actual loss or harm. *See Leardi v. Brown*, 394 Mass. 151 (1985) (finding that plaintiff residential tenants sustained an injury within meaning of Chapter 93A where defendant landlord included provisions in their leases that violated state sanitary code, even though provisions were never attempted to be enforced); *Aspinall v. Philip Morris Co.*, 442 Mass. 381, 402 (2004) (explaining that deceptive advertising regarding Marlboro Light cigarettes "if proved, effected a per se injury on consumers who purchased the cigarettes represented to be lower in tar and nicotine," even if those consumers suffered no injury).

More recently, however, the SJC has abandoned the notion that a plaintiff in a Chapter 93A action need not prove that the violation caused an injury. In 2006, the SJC ruled that such a plaintiff must prove both (1) "an invasion" of a "legally protected interest[]" and (2) that the "invasion causes the consumer a loss," either "economic or non-economic." *Hershenow v. Enterprise Rent-A-Car Co.*, 445 Mass. 790, 802 (2006) (finding that although collision damage

13

waiver provision in rental contract violated terms of Mass. Gen. Laws ch. 93A, consumers who

rented cars from defendant did not "satisfy the causation requirement of the 'injury' provision"

of Ch. 93A); *see also Rhodes v. AIG Domestic Claims, Inc.*, 461 Mass. 486 (2012) ("[T]o

recover under Ch. 93A § 9, a plaintiff must prove causation—that is, the plaintiff is required to

prove that the defendant's unfair or deceptive act caused an adverse consequence or loss.");

*Casavant v. Norwegian Cruise Line*, 460 Mass. 500, 503 (2011) (finding that violation of travel

service regulations qualified as unfair or deceptive acts that caused plaintiff "a loss:  the lack of a

prompt refund of the ticket price," and reiterating that the loss may be "economic or non-

economic"); *Iannacchino v. Ford Motor Co.*, 451 Mass. 623 (2008) (explaining that if properly

alleged, a claim that plaintiffs own vehicles with defective outside door handle in violation of

federal safety regulations would support a cause of action under Ch. 93A because plaintiffs

would have paid for more than they received).  Most recently, the SJC has framed the issue as

follows:

> The invasion of a consumer's legal right (a right, for example, established by statute or regulation), without more, may be a violation of G.L. c. 93A, § 2, and even a per se violation of § 2, but the fact that there is such a violation does not necessarily mean the consumer has suffered an injury or a loss entitling her to at least nominal damages and attorney's fees; instead the violation of the legal right that has created the unfair or deceptive act or practice must cause the consumer some kind of separate identifiable harm arising from the violation itself.

*Tyler v. Michaels Stores, Inc.*, 464 Mass. 492, 503 (2013).[5]

---

[5] In *Diviacchi v. Speedway LLC*, __ F. Supp. 3d __, 2015 WL 3648693, *3-6 (D. Mass. June 12, 2015), another judge on this court determined that a claim under Chapter 93A only requires an injury in claims for damages, and not claims for equitable relief.  Specifically, the court found that "a plaintiff may pursue a claim for purely injunctive relief . . . absent any injury . . . ." *Id.* at *6.  In making that determination, the *Diviacchi* court focused on language in *Tyler* that suggested the requirement of injury only applied in a claim for damages. *Id.* at *5.  Although *Diviacchi* holds that a Chapter 93A claim for injunctive relief may survive even in the absence of an injury, the Court finds that holding unpersuasive.  The plain language of Chapter 93A allows a person to bring an action when he or she "has been *injured* by another . . . ."  Mass. Gen. Laws ch. 93A, § 9.  Furthermore, as previously stated, recent SJC rulings have indicated that a plaintiff must prove (1) "an invasion" of a "legally protected interest[]" and (2) that the "invasion causes the consumer a loss," either "economic or non-economic." *Hershenow v. Enterprise Rent-A-Car Co.*, 445 Mass. 790, 802 (2006).

There does not appear to be a causation issue here:  the complaint alleges that the unfair or deceptive act or practice (the allegedly manipulative price marking) caused an identifiable harm (the purchase of a sweater that otherwise would not have occurred).  The question instead is whether that alleged harm is sufficient to sustain a claim under Chapter 93A.

Nordstrom cites *Rule*, 607 F.3d at 255, for the proposition that "injury under chapter 93A means economic injury in the traditional sense," and that therefore the complaint fails to state a claim.  In *Rule*, a dog owner purchased two doses of a heartworm medication for dogs.  *Id.* at 251.  After administering the medication to her dog, she learned that the manufacturer of the medication recalled it at the FDA's request because of potential adverse reactions, including deaths.  *Id.*   She brought a class action against the manufacturer of the heartworm medication, alleging a violation of Chapter 93A.  *Id.*   In her lawsuit, she sought damages for her and others similarly situated for the difference between the price they actually paid for the medication and what it would have been worth had safety risks been adequately disclosed.  *Id.* at 251-52.  The First Circuit observed that the decisions of the Supreme Judicial Court had left it "uncertain whether and when something less than conventional economic injury will suffice" under Chapter 93A.  *Id.* at 253.  It noted that "the most recent SJC cases on point appear to have returned to the notion that injury under chapter 93A means economic injury in the traditional sense; and, if cases like *Leardi* survive as exceptions, it is for the SJC to identify and define them."  *Id.* at 255.

As to the alleged injury, the *Rule* court noted that the plaintiff brought the lawsuit "*after* her purchases and use of the drug and she now knows that she got both the protection and convenience she sought *and* that the risk did not manifest itself in injury to her or her dog."  *Id.* at 253.  Because she "used up her purchases, neither holds nor sold anything of reduced value,

faced no continuing risk and suffered no harm," the court held that the plaintiff had not suffered an economic injury and therefore could not sue under Chapter 93A. *Id.* at 255.[6]

The holding of *Rule* is consistent with the SJC's decision in *Hershenow*, 445 Mass. at 790, in which the plaintiffs alleged that they had rented an automobile pursuant to an agreement that contained illegal provisions concerning the collision damage waiver ("CDW"). The rented automobile had not, however, been involved in a collision or otherwise damaged during the rental period, and thus the illegal provision was never enforced. *Id.* at 792. The court held that the plaintiff suffered no "injury" within the meaning of Chapter 93A; there was no "economic or noneconomic loss," because the rental agreement did not make the plaintiffs "worse off during the rental period than he or she would have been had the CDW complied in full with the requirements of [Massachusetts law]." *Id.* at 800-01.

This case bears some similarities to *Rule* and *Hershenow*. The alleged harm, if any, suffered by plaintiff here is not a "non-economic" injury; she does not claim, for example, that she suffered emotional distress as a result of the transaction. If it is anything, therefore, it is some form of "economic" injury. Here, as in *Rule* and *Hershenow*, there is no amount of money damages that could be awarded to plaintiff to make her whole. The injury that plaintiff claims to have suffered is not an "injury" in any traditional sense of the word. She paid $49.97 for a sweater on the alleged belief "that she saved at least 77% on her purchase." (Second Am. Compl. ¶ 24). But it appears that she paid $49.97 for a sweater that is, in fact, worth $49.97. She still has the sweater in her possession. She does *not* allege that it is worth less than the

---

[6] One subsequent District Court opinion described the *Rule* case as "stand[ing] for the proposition that overpayment for a product is not a recoverable injury where the plaintiff no longer has the product in her possession and did not suffer physical injury or product damage because of the product." *Martin*, 2010 WL 3928707, at *1 (citing *Rule*, 607 F.3d at 255).

selling price, that it was manufactured with shoddy materials or inferior workmanship, that it is

of an inferior design, or that it is otherwise defective.  The complaint simply alleges that she

would not have purchased the sweater in the absence of Nordstrom's misrepresentation.  It

further alleges that "[b]y creating an impression of savings, the presence of a higher reference

price enhances subjects' perceived value and willingness to buy the product. . . .  Thus, if the

reference price is not truthful, a consumer may be encouraged to purchase as a result of a false

sense of value."  (*Id.* ¶ 26 (quoting Dhruv Grewal & Larry D. Compeau, *Comparative Price

Advertising:  Informative or Deceptive?* 11:1 J. Pub. Pol'y & Marketing 52, 55-56 (Spring

1992))).  But the fact that plaintiff may have been manipulated into purchasing the sweater

because she believed she was getting a bargain does not necessarily mean she suffered economic

harm:  she arguably got exactly what she paid for, no more and no less.

It is superficially appealing to conclude that plaintiff has suffered a cognizable "injury"

under the law.  The requirements of misrepresentation and causation have been met:  plaintiff

alleges that she was unfairly directly induced into a purchase that she would not have made, but

for the misrepresentation.  And the transaction was arguably to her detriment; she would rather

have her money—which she could use to purchase other things—than the sweater.

Furthermore, there is a distinction between this case and *Rule* and *Hershenow* that could

be considered significant.  In *Rule* and *Hershenow*, the transactions could not be unwound:  the

dog medicine had already been purchased and administered and the automobile had already been

rented and returned.  *See Rule*, 607 F.3d at 255 (concluding that the plaintiff had "used up her

purchases, neither holds nor sold anything of reduced value, faced no continuing risk and

suffered no harm"); *Hershenow*, 445 Mass. at 800-01.  There was therefore no form of redress

available to the courts that would be equitable to all parties; any payment of money to the

plaintiffs, or any effort to undo the transaction, would leave the plaintiffs in a better position than when they started.  The transactions had become final without any harm having materialized.  Once the dog medicine had been administered (without ill effect) and the automobile had been returned (without a collision), the risk of injury had disappeared, and the plaintiffs had received the full benefit of the purchase.  Put simply, the plaintiffs were not entitled to both the money *and* the full value of the product or service for which the money was exchanged.

The transaction here did not involve any kind of risk, such as the risk of future injury to a pet or the risk of an uninsured collision.  Nonetheless, and in contrast to the situations in *Rule* and *Hershenow*, plaintiff here claims an ongoing consequence—she has a sweater that she allegedly purchased as a direct result of the alleged misrepresentation, and that she would not have purchased but for the misrepresentation.  And unlike the situations in *Rule* and *Hershenow*, the transaction can be undone.  An award of money damages, or a full refund, would give plaintiff a windfall (assuming that she kept the sweater).  But the Court could order an exchange—that is, it could order Nordstrom to refund the purchase price if plaintiff gives back the sweater (assuming that it is in the same condition as when she purchased it).  There is, therefore, an equitable remedy available to the Court that was not available in either *Rule* or *Hershenow*.

The question is whether all of that adds up to a legally cognizable "injury" within the meaning of Chapter 93A.  While it is impossible to answer that question with a high degree of confidence, given the tangled case law, it appears that the answer is "no."  Again, plaintiff does not allege that the sweater was worth less than $49.97 at the moment she bought it.  Her injury is that she was deceived into believing that she was getting a bargain.  But no Massachusetts case has ever found an injury under Chapter 93A under such circumstances, where the alleged injury

was based entirely on the plaintiff's subjective belief as to the nature of the value she received. Such a ruling would likely expand the category of injuries that are cognizable under Chapter 93A to a considerable extent.  It is for the SJC, not the federal courts, to decide whether to enter those murky waters.

In short, plaintiff's subjective belief that she did not receive a good value, without more, is not enough to establish the existence of a Chapter 93A injury.  That is true even though the complaint alleges that a specific and material misrepresentation (indeed, one that was specifically prohibited by regulation) directly caused her to purchase an item that she otherwise would not have purchased.  And it is true even though that purchase can be remedied with a fair exchange that does not provide plaintiff with a windfall, but simply restores the status quo ante. The law requires more than misrepresentation, causation, and a potential remedy:  it requires a legally cognizable "injury."  There does not appear to be such an injury here.  It therefore appears that the complaint does not state a claim within the meaning of Chapter 93A.[7]

That does not mean, of course, that there is no remedy for unfair or deceptive practices of the type alleged here.  Even in the absence of a compensable "injury," the Massachusetts Attorney General may seek enforcement of the law and obtain injunctive relief.  *See* Mass. Gen. Laws ch. 93A, § 4 ("Whenever the attorney general has reason to believe that any person is using or is about to use any method, act, or practice declared by section two to be unlawful, and that proceedings would be in the public interest, he may bring an action in the name of the commonwealth against such person to restrain . . . the use of such method, act or practice.");

---

[7] Mass. Gen. Laws ch. 93A § 9 provides that "if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater."  "The statutory damage provision does not supplant the requirement to prove causation under § 9.  It merely eliminates the need to quantify an amount of actual damages if the plaintiff can establish a cognizable loss caused by a deceptive act." *Hershenow*, 445 Mass. at 799 n.18.  Here, because the complaint does not allege a cognizable injury under Chapter 93A, the issue of statutory damages need not be reached.

*Rule v. Fort Dodge Animal Health Inc.*, 604 F. Supp. 2d 288, 304 (D. Mass. 2009) ("Chapter 93A was not 'mean[t] to authorize purely vicarious suits by self-constituted private attorneys-general.'" (quoting *Leardi*, 394 Mass. at 161)).

A final point should be noted.  Nordstrom contends that because it offered plaintiff, "and any other individuals . . . that have the same concerns over the pricing, a full refund for their purchase if they desire," (Duffy Decl. Ex. B), plaintiff is without standing to assert a claim. While that offer underscores the small stakes at issue in this case, it does not deprive plaintiff of her constitutional standing.  A reply to a demand letter under Chapter 93A that contains "a written tender of settlement which is rejected by the claimant" is relevant to "limit[ing] any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner."  Mass. Gen. Laws ch. 93A § 9.  "The statute views the reasonableness of the tender of settlement as a separate matter from the eventual verdict."  *Klairmont v. Gainsboro Restaurant, Inc.*, 465 Mass. 165, 184-85 (2013) (quoting *Capp Holmes v. Duarte*, 617 F.2d 900, 903 (1st Cir. 1980)).  But the offer of settlement—even if it offers plaintiff complete (or nearly complete) relief—does not provide a ground for dismissal.

In summary, the complaint fails to plead a cause of action under Chapter 93A, based on the absence of a cognizable injury.  Accordingly, the motion to dismiss Count Five will be granted.

### C.      Counts One, Two, and Three

Counts One, Two, and Three allege common-law claims for fraud, breach of contract, and unjust enrichment.  The complaint for all three counts appears to rely in substantial part on violations of the Code of Massachusetts Regulations.  (*See* Second Am. Compl. ¶¶ 48, 58, 62).

### 1.    <u>**Count One: Fraud**</u>

Count One alleges a claim of fraud against Nordstrom.  To establish fraud or fraudulent misrepresentation, a plaintiff "must show that the defendant [1] 'made a false representation of a material fact [2] with knowledge of its falsity [3] for the purpose of inducing the plaintiff to act thereon, and [4] that the plaintiff reasonably relied upon the representation as true and acted upon it [5] to [her] damage.'"  *Eureka Broadband Corp. v. Wentworth Leasing Corp.*, 400 F.3d 62, 68 (1st Cir. 2005) (quoting *Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 458 (2002)).

Nordstrom contends that plaintiff "(a) fails to identify a false statement made by Nordstrom Rack in connection with her purchase; (b) fails to plead that Nordstrom Rack knew or should have known of any such false statement; and . . . (c) fails to identify a harm caused by a false statement."  (Nordstrom's Mem. Support Mot. Dismiss 9).

The principal problem with the fraud claim is that the complaint fails to allege an actionable injury caused by the alleged false statement.  It is well-settled that a common-law action for fraud requires a pecuniary loss.  *See, e.g.*, Restatement (Second) of Torts § 525.  Having not alleged a pecuniary loss, the fraud claim cannot survive.

Plaintiff contends that the complaint sufficiently alleges common-law fraud because the alleged price comparisons "are false and deceptive" in that they do not comply with the requirements in the Code of Massachusetts Regulations.  However, plaintiff cites no cases in support of the proposition that an action for common-law fraud can be based on a violation of the Code of Massachusetts Regulations.  The First Circuit has noted that what qualifies as a deceptive practice under Chapter 93A "goes far beyond the scope of the common law action for fraud and deceit."  *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 56-57 (1st Cir. 2007) (quoting *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688 (1975)).

In short, because the complaint does not adequately allege common-law fraud, Count One will be dismissed.

### 2. <u>Count Two: Breach of Contract</u>

Count Two alleges a claim for breach of contract.  To prove a breach of contract under Massachusetts law, a plaintiff must show "that there was a valid contract, that the defendant breached its duties under the contractual agreement, and that the breach caused the plaintiff damage."  *Guckenberger v. Boston Univ.*, 957 F. Supp. 306, 316 (D. Mass. 1997) (citations omitted); *accord Michelson v. Digital Fin. Servs.*, 167 F.3d 715, 720 (1st Cir. 1999).  Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract.  *UNO Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).  The covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract."  *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 471-72.  Put another way, the parties to a contract implicitly agree "to deal honestly and in good faith in both the performance and enforcement of the terms of their contract."  *Hawthorne's, Inc. v. Warrenton Realty, Inc.*, 414 Mass. 200, 211 (1993). "[T]he purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance."  *UNO Restaurants*, 441 Mass. at 385.

The implied covenant may not be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship.  *UNO Restaurants*, 441 Mass. at 385-86; *AccuSoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001).  However, "[a] party may breach the covenant of good faith and fair dealing . . . without breaching the express term of th[e] contract.  Otherwise, the implied covenant would be a mere redundancy."  *Massachusetts v. Schering-Plough Corp.*, 779 F. Supp. 2d 224, 240 (D. Mass. 2011) (quoting *Speakman v.*

*Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005)).  "The essential inquiry is whether the challenged conduct conformed to the parties' reasonable understanding of the performance obligations, as reflected in the overall spirit of the bargain, not whether the defendant abided by the letter of the contract in the course of performance."  *Speakman*, 367 F. Supp. 2d at 132.

The complaint alleges that Nordstrom "either explicitly violated" the contract or violated the implied covenant of good faith and fair dealing by including a "Compare At" price that "does not exist in the marketplace within the meaning of the requirements of the Code of Massachusetts Regulations."  (Second. Am. Compl. ¶ 58).  It generally alleges that the "representations made in the contract of sale . . . were a material inducement to effectuate the sale, upon which the [p]laintiff . . . relied in purchasing [the sweater] from" Nordstrom.  (*Id.*).  The complaint does not actually allege that the contract was breached.  The complaint does not allege that the sweater was worth less than what plaintiff paid, or that plaintiff did not receive the benefit of the bargain.  "By charging this agreed price in exchange for ownership of the clothing, [Nordstrom] gave the plaintiff[] the benefit of [her] bargain."  *See Kim v. Carter's Inc.*, 598 F.3d 362, 364 (7th Cir. 2010) (finding that consumers failed to allege breach of contract where retailer sold them clothing that was advertised as discounted from suggested prices).

In summary, the complaint does not state an action for breach of contract, or breach of the implied covenant of good faith and fair dealing.  Accordingly, Count Two will be dismissed.

### 3.    Count Three: Unjust Enrichment

Count Three alleges a claim for unjust enrichment.  Unjust enrichment is defined as the "retention of money or property of another against the fundamental principles of justice or equity and good conscience."  *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329 (2005).  To succeed on a

claim for unjust enrichment, a plaintiff must show (1) a benefit conferred upon defendant by plaintiff, (2) an appreciation or knowledge by defendant of the benefit, and (3) that acceptance or retention of the benefit under the circumstances would be inequitable without payment for its value. *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009).

The complaint alleges that "Nordstrom has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its false, misleading and deceptive conduct." (Second Am. Compl. ¶ 61). The complaint alleges that plaintiff purchased the cardigan for the current price listed on the price tag. It does not allege that she did not receive the sweater or that she paid more than the sweater is worth—in other words, it does not allege that Nordstrom retained a benefit that would be inequitable without payment for its value. The conclusory allegation that Nordstrom "has been unjustly enriched" is not enough to state a claim for unjust enrichment. Accordingly, Count Three will be dismissed.

**IV.**    <u>**Conclusion**</u>

For the foregoing reasons, the motion of defendant Nordstrom Inc. to dismiss is GRANTED, and the motion of plaintiff Judith Shaulis to strike is DENIED as moot.

**So Ordered.**


                                            /s/ F. Dennis Saylor
                                            F. Dennis Saylor IV
Dated: August 14, 2015                      United States District Judge